COMMONWEALTH *vs.* JAMES X. KWIATKOWSKI.

Worcester. May 2, 1994. - August 3, 1994.

Present: LIACOS, C.J., WILKINS, ABRAMS, NOLAN, LYNCH, O'CONNOR, & GREANEY, JJ.

*Due Process of Law*, Vagueness of statute. *Statute*, Construction. *Stalking*.

At the trial of a complaint under G. L. c. 265, § 43, inserted by St. 1992, c. 31, the defendant adequately preserved for appellate review the issue whether the statute was facially vague, hence unconstitutional. [545-546]

The provisions of G. L. c. 265, § 43, do not state the elements of the offense of stalking with sufficient clarity to avoid a defendant's claim that the statute is unconstitutionally vague. [546-547]

The court construed the provisions of G. L. c. 265, § 43, prospectively to eliminate uncertainties in its construction and in order to reflect the presumed intention of the Legislature. [547-548]

COMPLAINT received and sworn to in the Worcester Division of the District Court Department on June 1, 1992.

On appeal to the jury session of that division, the case was tried before *Timothy S. Hillman*, J.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Wendy B. Golenbock* for the defendant.

*James P. McKenna*, Assistant District Attorney, for the Commonwealth.

WILKINS, J.  The defendant challenges a portion of the Commonwealth's new stalking statute, G. L. c. 265, § 43, inserted by St. 1992, c. 31, as facially vague and hence unconstitutional. We agree that the stalking statute is unconstitutionally vague in the respect asserted. Hence, it may not be enforced against the defendant, and his conviction of the crime of stalking must be reversed. It is within the proper

authority of this court to construe G. L. c. 265, § 43, prospectively to eliminate the identified uncertainty in its draftsmanship (see *Commonwealth* v. *Sefranka*, 382 Mass. 108, 111 [1980]), and we shall do so.[1]

The defendant and the victim Mary Kwiatkowski were married in 1984. In 1991, she filed for divorce and obtained a restraining order that, as amended, required the defendant to cease abusing her, to stay away from her residence, and to make no telephone calls to her. That amended restraining order had been issued in part because the defendant had telephoned Mary more than 150 times in a seven-day period, day and night, and had made threatening remarks during the calls. There was evidence of other threatening and harassing conduct by the defendant during 1990 and 1991. The divorce became final in January, 1992, but the restraining order remained in effect during the events in this case. The defendant was given the right to visit the children of the marriage. Mary was to bring the children to the defendant's apartment. He continued to be barred from going to Mary's residence.

On the last weekend in May, 1992, the children visited the defendant at his apartment. About 2:45 A.M. on Sunday, the defendant telephoned Mary to say that one of the children had had a nightmare. When Mary asked to speak with the child, the defendant said that the child had gone back to sleep. Mary inquired then why the defendant had called, and he said that he wanted to work some things out. Mary hung up when the defendant asked if she had any men in her apartment. Immediately the telephone rang again. Mary lifted the receiver, put it down, and thereafter left the receiver off the hook. About two hours later the defendant ap-

---

[1]We need not consider the defendant's other arguments in his appeal following guilty verdicts in a District Court jury session on one count charging a violation of the stalking law and three counts charging violations of a restraining order. We transferred the defendant's appeal to this court on our own motion. None of his arguments bears on the defendant's three convictions of violating a restraining order. Those convictions, therefore, stand. The defendant received concurrent sentences on those three convictions and on the stalking conviction.

peared at Mary's residence with the children. Mary answered the doorbell and found the children on the doorstep and the defendant standing in the driveway by his truck. Mary brought the children inside and called the police. Shortly thereafter, the defendant called Mary and said, "This is war. I'm going to get you."

1. The Commonwealth argues that the defendant has not preserved for appellate review the question whether the stalking statute is unconstitutionally vague. The defendant's argument is not a complete afterthought, but its presentation to the trial judge was not the product of organized forethought. Before trial, defense counsel presented two motions to dismiss based on vagueness, one alleging facial vagueness and another alleging vagueness as applied.[2] The judge took the motions under advisement and reserved the defendant's right to argue the motions at the conclusion of the trial, "if it goes against your defendant."

Although the motion for dismissal for facial vagueness was properly preserved for subsequent consideration, appropriate action on the motion based on the vagueness of the statute as applied depends on the evidence presented at trial and presents an issue that normally can be raised only by a motion for a required finding of not guilty. See *Commonwealth v. Jasmin*, 396 Mass. 653, 655 (1986). The defendant made no such argument in support of his motion for a required finding of not guilty, and he alleged neither a facial nor an as applied vagueness argument in his postconviction motion under Mass. R. Crim. P. 25 (b) (2), 378 Mass. 896 (1979), for a required finding of not guilty. Based on the judge's statement that the defendant's motion to dismiss for facial vagueness could be pressed after any conviction and the fact that the prosecution for stalking was based solely on a claim

[2]The defendant has not included these motions in his record appendix. The Commonwealth has provided them in its supplemental appendix.

The motion alleging facial vagueness does not state which portion of G. L. c. 265, § 43, is unconstitutionally vague. Stalking can be committed either by following or by harassing a person. There is no argument here that the "following" aspect of the crime presents a vagueness problem.

of a violation of the portion of the statute claimed to be vague, we conclude that the issue of facial vagueness was adequately preserved for appellate review.

2. The Commonwealth grants that "[t]he stalking law is faulty to the extent that its draftsmen failed to foreclose the argument that it applies where a stalker's alarming behavior forms multiple patterns of alarming behavior, yet not where his alarming behavior forms only one pattern." The Commonwealth is correct. The definition of the crime appearing in G. L. c. 265, § 43 (a) (1992 ed.), standing alone, presents no problem. It sets forth a crime with reasonable clarity — "[w]hoever willfully, maliciously, and repeatedly follows or harasses another person and who makes a threat with the intent to place that person in imminent fear of death or serious bodily injury shall be guilty of the crime of stalking."

The problem arises because G. L. c. 265, § 43 (d) (1992 ed.), announces a definition of "harasses" for the purposes of § 43 (a).[3] To be guilty under the "harassment" aspect, as opposed to the "following" aspect, of § 43 (a), it can be fairly argued, based on § 43 (d), that one must repeatedly harass, that is, must engage repeatedly (certainly at least twice) in a pattern of conduct or series of acts over a period of time. Under this interpretation, there must be repetition of either a pattern of conduct or a series of acts.[4] One pattern or one series would not be enough.

We doubt that the Legislature intended to provide that proof of either repeated patterns of conduct or repeated series of acts was an essential element of the harassment aspect of the crime of stalking. A single pattern of conduct or a single series of acts, combined with the other elements of the

[3]Section 43 (d) states: "For the purposes of this section, 'harasses' means a knowing and willful pattern of conduct or series of acts over a period of time directed at a specific person, which seriously alarms or annoys the person. Said conduct must be such as would cause a reasonable person to suffer substantial emotional distress."

[4]Although the judge quoted from § 43 (a) and § 43 (d) in his jury charge, he did not charge the jury on the effect of the relationship of the two subsections. The defendant did not, however, object to the judge's instructions.

crime, was presumably intended to constitute the crime. That is not, however, stated in § 43 with sufficient clarity to avoid the force of the defendant's claim of unconstitutional vagueness. "It is a central tenet of our constitutional law that, as a matter of due process, a criminal statute that fails to give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden should be deemed void for vagueness." *Opinion of the Justices*, 378 Mass. 822, 826 (1979). See *Commonwealth* v. *Williams*, 395 Mass. 302, 304 (1985). Section 43 fails to pass this constitutional test.

The Commonwealth argues that the evidence would warrant a finding that the defendant repeatedly engaged in patterns of conduct or repeatedly engaged in a series of acts and thus the conviction can stand. The case was not submitted to the jury on this theory of the crime of stalking, and hence the conviction cannot stand. Moreover, the uncertain meaning of repeated patterns of conduct or repeated series of acts presents its own unconstitutional vagueness. The result is that the portion of the stalking statute concerning harassing conduct lacks any reasonably discernible unambiguous application, and the defendant may properly assert a facial challenge to it. Thus not only can the defendant's conviction not be upheld on the theory of repeated patterns or repeated series, but, because of the vagueness of the statute on this theory, the defendant may not properly be retried on any theory on the stalking charge.

3. It is appropriate for this court to interpret a statute prospectively to eliminate uncertainties in its construction and in order to reflect the presumed intention of the Legislature. See *Commonwealth* v. *A Juvenile*, 368 Mass. 580, 597-598 (1975). Cf. *Osborne* v. *Ohio*, 495 U.S. 103, 115 (1990). We conclude that, from the date of this opinion, the statutory crime of stalking based on conduct that harasses a victim constitutes the following: A person shall be guilty of the crime of stalking if that person (1) wilfully and maliciously engages in a knowing pattern of conduct or series of acts over a period of time directed at a specific person which seriously alarms or annoys that person and would cause a rea-

sonable person to suffer substantial emotional distress and (2) also makes a threat with the intent to place that person in imminent fear of death or bodily injury.[5] We have not used the ambiguous word "repeatedly" in our statement of the elements of the crime,[6] but the concept is included in the words "pattern of conduct" and "series of acts." A pattern or a series in the context of this statute would involve more than two incidents.

The judgment entered on the crime of stalking is reversed. Judgment shall be entered for the defendant on the stalking count. The convictions of violating a restraining order are affirmed.

*So ordered.*

---

[5]If the proof of the crime of stalking is based on the defendant's following another person, that would have to be charged separately, using the word "repeatedly." If the crime is aggravated because it is committed in violation of an order, judgment, or injunction listed in § 43 (*b*), that also would have to be charged separately.

[6]There is authority in different contexts that "repeated" or "repeatedly" means simply more than once. See *Todd Shipyards Corp.* v. *Secretary of Labor,* 586 F.2d 683, 686-687 (9th Cir. 1978); *Konrad* v. *Alaska,* 763 P.2d 1369, 1379 (Alaska Ct. App. 1988); *South Dakota* v. *Diede,* 319 N.W.2d 818, 821 (S.D. 1982). Cf. *Kneeland* v. *Emerton,* 280 Mass. 371, 381-382 (1932). Other authority states that "repeatedly" means more than twice. See *Bethlehem Steel Corp.* v. *Occupational Safety and Health Review Comm'n,* 540 F.2d 157, 162 (3d Cir. 1976). The answer, of course, often depends on the context in which the word is used.