**STATE**

v̇.

David J. FONSECA.

No. 95–59–C.A.

Supreme Court of Rhode Island.

Feb. 8, 1996.

Albert E. Medici, Jr., Special Asst. Atty. General, Aaron Weisman, Asst. Atty. General, for Plaintiff.

Kevin P. Landry, Cumberland, for Defendant.

## OPINION

BOURCIER, Justice.

This case concerns the constitutionality of Rhode Island's former version of the statute prohibiting "stalking." On January 9, 1995, a Superior Court trial justice dismissed a criminal misdemeanor complaint against the defendant, David J. Fonseca, ruling that G.L. 1956 (1994 Reenactment) § 11–59–2 was unconstitutionally vague because it was "facially ambiguous." The dismissal order was entered on January 17, 1995. From that order, the state has filed its appeal. During the pendency of the appeal, the General Assembly, on February 16, 1995, amended the stalking statute (P.L.1995, ch. 7, § 1).[1] We rule today, however, that although the original statute may have been ineptly drafted, it was not so ambiguously worded as to render it unconstitutional. We sustain the state's appeal and remand this case to the Superior Court with directions to reinstate the complaint against the defendant and for further proceedings in accordance with the statute as amended. *State v. Babbitt,* 457 A.2d 1049, 1054–55 (R.I.1983); *State v. Souza,* 456 A.2d 775, 781 (R.I.1983).

▊ The defendant was arrested in May 1994 on charges of stalking his estranged wife and for violating a District Court restraining order that prohibited him from having contact with her. General Laws 1956 (1988 Reenactment) § 15–15–3, as amended by P.L.1990, ch. 222, § 2. After trial in the District Court on July 18, 1994, defendant was convicted of both charges. He was sentenced to serve one year at the Adult Correctional Institutions on the stalking count, and he received a one-year suspended sentence on the violation of probation count. In addition, he was also found to be a probation violator and sentenced to serve one year at the Adult Correctional Institutions, that sentence to be served concurrent with the stalking sentence. The defendant appealed his convictions to the Superior Court. Before trial, on December 21, 1994, he filed a motion to dismiss the stalking count asserting that

the statute was "facially vague and therefore unconstitutional." His motion to dismiss was heard before a Superior Court trial justice on January 9, 1995. At that hearing no factual record was made of the defendant's alleged offending acts. The defendant relied upon his general claim that the state's stalking statute, as enacted, was unconstitutional under the so-called void-for-vagueness doctrine. The statute in question, § 11–59–2, then provided in pertinent part, as follows:

> "(a) Any person who willfully, maliciously, and repeatedly follows or harasses another person with the intent to place that person in reasonable fear of bodily injury is guilty of the crime of stalking, punishable by imprisonment for not more than one year or by a fine or not more than one thousand dollars ($1,000), or both."

In the statute's definition section, § 11–59–1, the following words and phrases were defined.

> "(1) 'Course of conduct' means a pattern of conduct composed of a series of acts over a period of time, evidencing a continuity of purpose. Constitutionally protected activity is not included within the meaning of 'course of conduct.' (2) 'Harasses' means a knowing and willful course of conduct directed at a specific person which seriously alarms, annoys, or harasses the person, and which serves no legitimate purpose. The course of conduct must be such as would cause a reasonable person to suffer substantial emotional distress, or be in fear of bodily injury."

The void-for-vagueness doctrine, as it has been developed by the United States Supreme Court and adopted by this court, mandates that due process considerations under the Fifth and Fourteenth Amendments to the United States Constitution fairly require that "a criminal statute be declared void when it is 'so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application.'" *State v. Alegria,* 449 A.2d 131, 133 (R.I.1982) (quoting *Connally v. General Construction Co.,* 269

---

1. General Laws 1956 (1994 Reenactment) § 11–59–2 was amended effective February 16, 1995. It now confers criminal liability upon, "[a]ny person who: *(i) harasses another person; or (ii)*

*willfully, maliciously, and repeatedly follows* another person with the intent to place that person in reasonable fear of bodily injury* * *."* (Emphasis added.)

U.S. 385, 391, 46 S.Ct. 126, 127, 70 L.Ed. 322, 328 (1926)). "Thus, the state may not hold an individual 'criminally responsible for conduct which he could not reasonably understand to be proscribed.'" *Alegria,* 449 A.2d at 133 (quoting *United States v. Harriss,* 347 U.S. 612, 617, 74 S.Ct. 808, 812, 98 L.Ed. 989, 996 (1954)). The state has an obligation to frame its criminal statutes so as to adequately inform the public of the type of conduct that is prohibited. *Alegria,* 449 A.2d at 133 (citing *Cline v. Frink Dairy Co.,* 274 U.S. 445, 47 S.Ct. 681, 71 L.Ed. 1146 (1927)).

▄ The defendant here, as well as before the Superior Court, relies upon a 1994 opinion by the Supreme Judicial Court of Massachusetts wherein the commonwealth's stalking statute was similarly challenged, and the statutory phrase "repeatedly follows or harasses" was found to be ambiguous and therefore failed to give sufficient warning of the conduct the statute sought to prohibit. The defendant here asserts that the word "repeatedly" in the statute may be construed to modify *both* the word "follows" *and* "harasses." Therefore, he contends one who "repeatedly harasses"—as "harasses" is defined by the statute—would have to engage repeatedly (presumably meaning at least twice) in a "course of conduct directed at a specific person." This "course of conduct," being statutorily defined as a "pattern of conduct composed of a series of acts over a period of time," could, if carried to its logical conclusion, require under defendant's theory, that a person must commit at least two "series of acts over a period of time" in order to be deemed guilty of stalking. One series of harassing acts would not be enough. *See Commonwealth v. Kwiatkowski,* 418 Mass. 543, 637 N.E.2d 854 (1994).

The wordplay above was considered by the Supreme Judicial Court of Massachusetts in the *Kwiatkowski* case, and that court held that it would judicially "eliminate uncertainties" in the statute's construction and redact the word "repeatedly" from the statute in order to "reflect the presumed intention of the Legislature." 418 Mass. at 547, 637

N.E.2d at 857. The perceived intention for doing so was that the stalking statute only required a single series of acts, combined with the other elements of the crime, to constitute the offense of stalking. *Id.* at 546–47, 637 N.E.2d at 857. However, the Supreme Judicial Court would not allow Kwiatkowski to be held criminally accountable under the statute as it existed, holding that at the time of his arrest the statute was not worded "with sufficient clarity to avoid the force of the defendant's claim of constitutional vagueness." *Id.* at 547, 637 N.E.2d at 857. That metaplasmic approach, however, has attracted little, if any, following. Other state appellate courts addressing similar stalking statutes have reached different conclusions.

In August 1994 a California appellate court upheld that state's stalking statute which also contained language very similar to that in the former § 11–59–2. In *People v. Heilman,* 25 Cal.App.4th 391, 30 Cal.Rptr.2d 422 (1994), the California appellate court held that the word "repeatedly" would not be construed to modify the word "harasses" because "[s]uch a reading is inconsistent with the intent of the statute to penalize a single course of conduct of harassment." *Id.* at 399, 30 Cal.Rptr.2d at 426–27. We agree with that conclusion and find that the word "repeatedly" modifies "following" and not "harassment." The California court noted that it would defy logic to construe the statute so as to require that a person repeatedly commit "harassment," a word that by definition already contemplates the commission of multiple acts. *Id.*[2] We agree with that court's reasoning.

▄ "The standard employed to gauge whether a particular statutory term reasonably informs an individual of the criminality of his conduct is whether the disputed verbiage provides adequate warning to a person of ordinary intelligence that his conduct is illegal by common understanding and practice." *State v. Authelet,* 120 R.I. 42, 45, 385 A.2d 642, 644 (1978) (citing *Roth v. United States,* 354 U.S. 476, 77 S.Ct. 1304, 1 L.Ed.2d

---

**2.** Other states have upheld the constitutionality of their stalking statutes after consideration of the word "repeatedly." *See, e.g., State v. Culmo,* 43 Conn.Supp. 46, 642 A.2d 90 (1993); *Pallas v.* *State,* 636 So.2d 1358 (Fla.Dist.Ct.App.1994); *State v. Saunders,* 886 P.2d 496 (Okla.Crim.App. 1994); *State v. McGill,* 536 N.W.2d 89 (S.D. 1995).

1498 (1957)). We are satisfied that the former § 11–59–2 statute, as drafted, did give adequate warning to potential offenders of the conduct that was prohibited. It indeed defies logic to conclude that a defendant would have to commit more than one series of harassing acts in order to be found guilty of stalking.

In reaching our decision, we note that it is this court's responsibility to determine the General Assembly's legislative intent when construing legislative enactments. *State v. Kane,* 625 A.2d 1361, 1363 (R.I.1993). It is well settled that this court will presume a legislative enactment of the General Assembly to be constitutional and valid and will so construe the enactment whenever such a construction is reasonably possible. *Kass v. Retirement Board of the Employees' Retirement System,* 567 A.2d 358, 360 (R.I.1989). The burden of overcoming the presumptive constitutionality of a statute rests on the challenging party and must be proven beyond a reasonable doubt. *Seibert v. Clark,* 619 A.2d 1108, 1113 (R.I.1993); *State v. Capone,* 115 R.I. 426, 432–33, 347 A.2d 615, 619 (1975). If more than one construction is possible, we will opt for that which will avoid unconstitutionality. *Kass,* 567 A.2d at 360.

We note from our review of the case file that the Superior Court, in analyzing the constitutionality of the stalking statute, did not undertake to first develop a factual record of the activity in which the defendant allegedly engaged. "It is well established that vagueness challenges to statutes which do not involve First Amendment freedoms must be examined in the light of the facts of the case at hand." *United States v. Mazurie,* 419 U.S. 544, 550, 95 S.Ct. 710, 714, 42 L.Ed.2d 706, 713 (1975). Since there was no suggestion in this case that any of the defendant's First Amendment interests were threatened by the statute, the trial justice should have conducted an evidentiary hearing to discern whether the prohibitory language of the stalking statute, as applied to the defendant's specific alleged conduct, was in fact unconstitutionally vague. *Maynard v. Cartwright,* 486 U.S. 356, 361, 108 S.Ct. 1853, 1858, 100 L.Ed.2d 372, 380 (1988). In fact, *Kwiatkowski* was decided *after* a trial.

For the reasons above stated, we hold that the stalking statute, § 11–59–2, as originally enacted, passes constitutional muster and was not so ambiguously worded as to have been declared unconstitutionally vague. The fact that the General Assembly amended the statute shortly after the Superior Court's decision, choosing not to wait for this court's appellate review, is of no consequence. The state's appeal is sustained and the order appealed from is vacated. We remand the papers of this case to the Superior Court for further proceedings in accordance with this opinion.