Jerome SNOWDEN, Defendant Below, Appellant,

v.

STATE of Delaware, Plaintiff Below, Appellee.

No. 398, 1995.

Supreme Court of Delaware.

Submitted: May 9, 1996.

Decided: June 7, 1996.

■

Edward C. Gill, Georgetown, for Appellant.

John Williams, Deputy Attorney General, Department of Justice, Dover, for Appellee.

Before WALSH, HARTNETT, and BERGER, JJ.

WALSH, Justice:

The defendant below, Jerome Snowden ("Snowden"), appeals his conviction of stalking on the basis of alleged constitutional infirmities in the statute, 11 *Del.C.* § 1312A, and the erroneous admission of evidence against him. Snowden also argues that he cannot be convicted since his behavior consisted of the mere exercise of a constitutionally protected right to travel. Even if such activity is punishable, the State did not introduce sufficient evidence to convict, according to Snowden.

Our reading of the stalking statute finds that it is neither vague nor defines the offense in such a manner as to restrict a protected constitutional right. We conclude that the record in this case supports a jury finding that the elements of the offense had been established beyond a reasonable doubt. The judgment of the Superior Court is therefore affirmed.

I.

The State presented evidence at Snowden's trial which depicted the following events. Snowden worked with the stalking victim, Josephine Teagle ("Teagle"), at the same company in Milford, Delaware for approximately ten years. Snowden had expressed a romantic interest in Teagle, but she had refused his advances. Snowden was arrested for stalking Teagle in 1993 after repeatedly following her and calling her at home. He pled guilty to that charge, was sentenced to two years probation and ordered to have no contact with Teagle for two years. Teagle began a new job two years prior to the stalking incidents which form the basis for the present convictions.

On April 21, 1995, after the expiration of the no contact order, Snowden followed Teagle home from her new work location. After she noticed Snowden following her, Teagle went into a store for a few minutes before driving back onto Route 36. While again traveling on Route 36, she noticed Snowden standing by his truck at a store. As Teagle drove by, Snowden jumped in and followed her "very close" to Bridgeville. Since a train was approaching, Teagle turned into a private driveway on Forest Green Road in order to avoid stopping with Snowden behind her. When Teagle pulled into the driveway, Snowden pulled his pickup truck directly behind her. Teagle rolled down her window and told Snowden to leave her alone.

According to Teagle, Snowden also followed her on April 24 and 26, as well as on May 1, 2, and 3. Teagle recalled seeing Snowden pass her traveling in the opposite direction one day during this time period, and Snowden turned around and began following her. Teagle testified that his following her "got on her nerves," and she did not know what to do other than contact the police. Teagle changed her travel route and avoided making shopping stops because Snowden would follow her from store to store and wait in the parking lot.

On May 5, 1995, Teagle went to the Greenwood Bank where she again noticed Snowden following her. On this occasion, she contacted the Greenwood Police Department, and an officer met Teagle at the bank. The officer described Teagle as "a little nervous ... talking quickly and [seeming] angry." Teagle gave the officer a description of the vehicle that was following her and as the two were standing in the bank parking lot, the officer saw a vehicle matching that description drive by.

The officer then took Teagle to Delaware State Police Troop 5 in Bridgeville. Teagle filed a complaint with another officer, who described Teagle as very nervous, angry and frustrated. Teagle told this officer that Snowden's behavior made her concerned for her safety.

At trial, Snowden claimed that the May 5 incident was coincidental and denied following Teagle on other occasions. Evidently giving little credibility to Snowden's testimony, the jury returned a verdict of guilty, and this appeal followed. Snowden advances three general arguments for reversal: the unconstitutional vagueness of the stalking statute; insufficiency of the evidence to prove harassment; and the erroneous admission of his prior stalking conviction.

## II.

Snowden asserts that the Delaware stalking statute, 11 *Del.C.* § 1312A, is unconstitutionally vague. That statute punishes "[a]ny person who wilfully, maliciously and repeatedly follows or harasses another person...." 11 *Del.C.* § 1312A(a).[1] "Harasses" is defined as "a knowing and wilful course of conduct directed at a specific person which seriously alarms, annoys or harasses the person, and which serves no legitimate purpose." 11 *Del.C.* § 1312A(b)(1). "Course of conduct" is then defined as "a pattern of conduct composed of a series of acts...." 11 *Del.C.* § 1312A(b)(2). Snowden argues that the language of the statute is unclear because it requires repeated harassment, and harassment is itself defined as a course of conduct requiring multiple acts.

The "void-for-vagueness doctrine requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." *Kolender v. Lawson*, 461 U.S. 352, 357, 103 S.Ct. 1855, 1858, 75 L.Ed.2d 903 (1983). When a legislative enactment not affecting First Amendment rights is challenged as unconstitutionally vague, it must be reviewed as it applies to the particular conduct at issue. *Wright v. State*, Del.Supr., 405 A.2d 685, 687 (1979); *State v. General Chem. Corp.*, Del.Supr., 559 A.2d 292, 294–95 (1988).

Snowden relies on *Commonwealth v. Kwiatkowski*, 418 Mass. 543, 637 N.E.2d 854 (1994), which reformed a similar Massachusetts stalking statute to cure vagueness. That court reasoned that:

> the stalking law is faulty to the extent that its draftsmen failed to foreclose the argument that it applies where a stalker's alarming behavior forms multiple patterns of alarming behavior, yet not where his alarming behavior forms only one pattern....
>
> A single pattern of conduct or a single series of acts, combined with the other elements of the crime, was presumably intended to constitute the crime. That is not, however, stated in [the statute] with sufficient clarity to avoid the force of the defendant's claim of unconstitutional vagueness....
>
> Moreover, the uncertain meaning of repeated patterns of conduct or repeated series of acts presents its own unconstitutional vagueness. The result is that the portion of the stalking statute concerning harassing conduct lacks any reasonably discernable unambiguous application....

637 N.E.2d at 857 (internal quotation marks omitted).

Other courts have declined to follow the reasoning set forth in *Kwiatkowski* when examining statutes similar to Delaware's stalking statute. *See People v. Heilman*, 25 Cal.App.4th 391, 30 Cal.Rptr.2d, 422, 426–27

---

1. The statute provides in part:
   (a) Any person who wilfully, maliciously and repeatedly follows or harasses another person or who repeatedly makes a credible threat with the intent to place that person in reasonable fear of death or serious physical injury is guilty of the crime of stalking.
   (b) For the purposes of this section the following definitions are provided:
   (1) "Harasses" means a knowing and wilful course of conduct directed at a specific person which seriously alarms, annoys or harasses the person, and which serves no legiti-
   mate purpose. The course of conduct must be such as would cause a reasonable person to suffer substantial emotional distress, and must actually cause substantial emotional distress to the person.
   (2) "Course of conduct" means a pattern of conduct composed of a series of acts over a period of time, however short, evidencing a continuity of purpose. Constitutionally protected activity is not included within the meaning of "course of conduct."
   11 *Del.C.* § 1312A.

(1994). The Supreme Court of Rhode Island, upholding a similar stalking statute against a vagueness challenge, applied the test of whether an individual of ordinary intelligence would be reasonably warned that his conduct is criminal. *State v. Fonseca*, R.I.Supr., 670 A.2d 1237, 1239 (1996). That court concluded:

> We are satisfied that the ... statute, as drafted, did give adequate warning to potential offenders of the conduct that was prohibited. It indeed defies logic to conclude that a defendant would have to commit more than one series of harassing acts in order to be found guilty of stalking.

*Id.* at 1240.

We agree that it would be illogical to read the statute to require repeated harassing when harassing itself is defined as consisting of repetitive acts. *See State v. Cooper*, Del. Supr., 575 A.2d 1074, 1076 (1990) ("Perceived interpretations which yield illogical ... results should be avoided."). Consequently, we hold that the language of the statute has only one logical reading, namely that "repeatedly" modifies "follows" and not "harasses." Repeated following is an element of stalking, and harassing is an alternative element. Because only one logical reading is possible, the statute is not ambiguous on its face. *Coastal Barge Corp. v. Coastal Zone Indus. Control Bd.*, Del.Supr., 492 A.2d 1242, 1246 (1985); 2A Norman J. Singer, *Sutherland Statutory Construction* § 45.02 (1994); *cf. State v. General Chem. Corp.*, 559 A.2d at 295 ("This Court has an obligation in a case where a statute is being challenged for vagueness to construe the statute in such a manner as to avoid the infirmity.").

■ The constitutional test, however, is whether Snowden was fairly informed by the language of the statute that his acts were criminal. *Wright*, 405 A.2d at 687. Even assuming *arguendo* that the proximity of "repeatedly" to "harasses" in the statute would cause some confusion to a person of ordinary intelligence, Snowden could not have believed his conduct was legal. A person of ordinary intelligence would understand that following a person on several different days would constitute harassment under the statute, especially with knowledge that the victim has found this behavior distressing in the past. After his first conviction, Snowden undoubtedly must have known that his actions were alarming, annoying or harassing to Teagle, who had initiated the previous complaint against him. *See* 11 *Del.C.* § 1312A(b)(1). We therefore reject Snowden's claim that the statute is unconstitutionally vague, generally, or as applied to him.

## III.

■ Snowden advances another argument with constitutional underpinning to invalidate his conviction. He contends that his actions in following Teagle on the public roads of this State are constitutionally protected and therefore explicitly excluded from the stalking statute. Under the statute, harassment is defined as a "course of conduct," 11 *Del.C.* § 1312A(b)(1), and "[c]onstitutionally protected activity is not included within the meaning of 'course of conduct.'" 11 *Del.C.* § 1312A(b)(2).

Snowden principally relies upon *Lutz v. City of York*, 3rd Cir., 899 F.2d 255 (1990), for his argument that his use of public roads is constitutionally protected. Positing this right on the concept of substantive due process, the Third Circuit "conclude[d] that the right to move freely about one's neighborhood or town, even by automobile, is indeed 'implicit in the concept of ordered liberty' and 'deeply rooted in the Nation's history.'" 899 F.2d at 268 (citation omitted). A governmental restriction burdening this right faces "intermediate scrutiny, and will be upheld if it is narrowly tailored to meet significant [governmental] objectives." *Id.* at 270.

Under intermediate scrutiny, governmental restrictions may, nonetheless, readily pass constitutional muster. *Adarand Constructors, Inc. v. Pena*, — U.S. —, —, 115 S.Ct. 2097, 2104, 132 L.Ed.2d 158 (1995) (characterizing intermediate scrutiny as a "lenient standard"). When reviewed under this standard, "the right to travel cannot conceivably imply the right to travel whenever, wherever and however one pleases—even on roads specifically designed for public travel." *Lutz*, 899 F.2d at 269.

We conclude that Snowden's behavior is not constitutionally protected under the standard enunciated in *Lutz.* Restricting the persistent following of another on the public roads is designed to achieve the significant governmental objective of preventing the emotional harm to individuals caused through fear and loss of privacy, as well as the more general societal interest in fostering a sense of security. The definition of harassment in the statute is narrowly tailored to meet this interest. For example, travel on public roads is not restricted if the adverse effects are unintentional or if the travel serves a legitimate purpose. 11 *Del.C.* § 1312A(b)(1). The restriction on the right to travel in this case is therefore permissible.

## IV.

■ Snowden argues that the evidence in this case fails to satisfy the element that his actions subjected Teagle to emotional distress. Specifically, he contends that proof of the element of substantial emotional distress requires expert testimony. We find no basis in Delaware law for such a requirement and therefore reject this argument.

Snowden offers no authority in support of this proposition, but he contends that to allow proof of substantial emotional distress without expert testimony would create a flood of civil litigation. This argument rests on the false assumption that current Delaware practice requires expert testimony to substantiate the existence of a particular mental condition. Litigants may demonstrate mental states in their chosen manner. For example, no expert testimony is required to establish "extreme emotional disturbance" as a mitigating factor to first degree murder. 11 *Del.C.* § 641 (requiring preponderance of evidence to establish extreme emotional disturbance). Similarly, no expert testimony is required to prove emotional distress in cases alleging intentional infliction of emotional distress. *See State v. Rodebaugh,* Del.Super., Cr.A. Nos. IN88–04–0668R2 and –0669R2, 1993 WL 603334, Gebelein, J. (Mar. 5, 1993).

Snowden urges that we adopt an expert testimony requirement and overrule *State v. Knight,* Del.Super., Cr.A. No. IN–92–12–

0179, 1994 WL 19938, Carpenter, J. (Jan. 19, 1994). That court held that it was

> not persuaded by the defendant's argument that, to demonstrate substantial emotional distress, the state is required to present independent medical testimony on this issue. There is no requirement to present such testimony under the statute and to do so would only traumatize the victim further. The credibility of the victim was an issue for the jury to decide, and their decision to believe her version of the events and the effect it had on her personal and professional life is clearly supported by the evidence.

Slip op. at 5.

The *Knight* court indicated that jurors were capable of assessing the impact of stalking on the victim based on her testimony alone. Concepts within the ordinary experience of jurors do not require expert testimony. *See Phillips v. Delaware Power & Light Co.,* Del.Supr., 216 A.2d 281, 284 (1966). Since the average person understands the meaning of substantial emotional distress, expert testimony is required neither for the juror's understanding nor by the law. Accordingly, we approve the result reached in *State v. Knight.*

## V.

■ Snowden raises several arguments that the evidence presented at trial was insufficient to sustain his conviction. This Court reviews a claim of insufficient evidence to determine "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Williams v. State,* Del.Supr., 539 A.2d 164, 168 (1988) (citation omitted).

Snowden correctly notes that the State charged him by information under the "harassment" prong of the stalking statute and not the alternative "following" prong. *See* 11 *Del.C.* § 1312A(a). The State must therefore prove harassment. *See* Super.Ct.Crim.R. 7(c)(1); *State v. Minnick,* Del.Super., 168 A.2d 93, 97 (1960) ("A defen-

dant has a right to rely on the phraseology of the indictment . . . .").

### A.

Snowden argues that the trial judge erred by admitting evidence of his previous stalking conviction. Snowden contends that the State should have disclosed its intention to introduce this evidence before the day of the trial and the court should have sanctioned the State for its late disclosure. While we agree with the trial judge that the State's late disclosure was a literal violation of its discovery obligation, no significant prejudice resulted.

■ Prior to trial, Snowden requested, pursuant to Superior Court Criminal Rule 16(a)(1)(C), that the State disclose all documents which it planned to introduce at trial. The State did not disclose within the twenty days allowed by Super.Ct.Crim.R. 16(d)(3)(B) that it intended to introduce Snowden's prior stalking conviction, but instead waited until the morning of the trial to so notify Snowden. The trial judge concluded that this was a technical violation but not contrary to the spirit of the rule and thus sanctions were not appropriate.

The Superior Court did not abuse its discretion in declining to sanction the State for a discovery violation. *See Doran v. State*, Del.Supr., 606 A.2d 743, 745 (1992). In determining the question of whether sanctions should be imposed, the trial court should weigh all relevant factors, such as the reasons for the State's delay and the extent of prejudice to the defendant. *Id.* at 745 n. 3.

In this case, the court found that the prejudice was minimal. The fact of his prior conviction could not have surprised Snowden. Indeed, the State gave Snowden a copy of his entire criminal record during discovery and he was thus on general notice that the evidence was available to the State if it wished to introduce it. Under the circumstances, the court below had ample basis for concluding that the State's technical discovery violation did not warrant a sanction.

### B.

■ Snowden's other challenge regarding the admission of his prior conviction is based on D.R.E. 403 and 404(b). Rule 404(b) provides that

> Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident.

Since Snowden claimed that his encounter with Teagle near the Greenwood Bank on May 5 was coincidental, the admission of the prior conviction was relevant to show the absence of accident. While evidence of prior crimes is not admissible to prove subsequent similar action, such evidence is explicitly permitted to show absence of mistake. D.R.E. 404(b). The trial judge also allowed this prior conviction into evidence because it showed knowledge and intent, both explicitly allowed under the rule.

■ Snowden also claims that even if the evidence is relevant under D.R.E. 404(b), it should have been excluded since "its probative value [was] substantially outweighed by the danger of unfair prejudice . . . ." D.R.E. 403. In this case, the trial judge found that such danger was not present, especially since he gave the jury an instruction regarding the limited purpose for which such evidence was admissible.[2] *See Getz v. State*, Del.Supr., 538

---

2. The jury instruction included the following guidelines:

> You must not take this evidence of a prior conviction as proof that the defendant committed this offense because it is an entirely separate offense, or that the person is a bad person or probably committed the offense. You are not to consider such evidence to conclude that he has a . . . certain character trait, or to conclude that he acted in conformity to some character trait.

> The evidence is offered to show . . . whether or not the contacts were accidental in nature. You may consider whether or not the defendant had knowledge of this type of offense and, therefore, how his actions could be viewed or the effect that it might have.

> So, really, it's only introduced for the purposes of determining the state of mind of the defendant at the time of the alleged incidents and you are to use it for no other purposes.

A.2d 726, 734 (1988). The trial judge also considered this evidence to be highly probative on the issue of whether Snowden's actions were accidental. We find that the Superior Court appropriately conducted the balancing test required by D.R.E. 403 and did not abuse its discretion in concluding that the evidence of his prior conviction should have been admitted. *See Pope v. State,* Del. Supr., 632 A.2d 73, 78–79 (1993).

## VI.

 In conclusion, we reject Snowden's allegations of error as unsupported legally and factually. Snowden's activities were not protected by the right to travel nor is the stalking statute void for vagueness. Expert testimony is not required to show substantial emotional distress where harassment is alleged. The evidence in this case clearly supports the jury verdict and Snowden's conviction must be sustained.

The judgment of the Superior Court is therefore AFFIRMED.