## COMMONWEALTH *vs.* HECTOR A. MARTINEZ.

No. 95-P-1951.

Hampden. May 9, 1997. - August 21, 1997.

Present: PIRRETTA, PORADA, & LENK, JJ.

*Stalking. Statute,* Construction. *Evidence,* Prior misconduct. *Words,* "Repeat-
  edly."

The term "repeatedly" found in G. L. c. 265, § 43(a), was construed to be
  ambiguous as applied to a prosecution under that statute, with the result
  that the evidence against the defendant, consisting of two instances of his
  "following" the victim, was not sufficient to support a conviction under
  the statute. [410-411]
There was no merit to a criminal defendant's contention that his trial counsel
  provided him with ineffective assistance. [411-412]
At the trial of complaints for violation of a domestic protective order, stalking
  and trespassing, the judge properly admitted evidence of the defendant's
  prior bad acts where they were relevant to and probative of the crimes
  charged, and of the defendant's relationship to the victims; error, if any,
  was not shown to be prejudicial in any event, and no substantial risk of a
  miscarriage of justice was demonstrated. [412-413]


COMPLAINTS received and sworn to in the Springfield Division
of the District Court Department, one each on July 1, 1992,
April 7, 1993, May 24, 1993, June 14, 1993, September 17,
1993, and March 13, 1995, respectively.

The cases were tried before *Jacques Leroy,* J.

*Kenneth R. Liebman* for the defendant.

*Deborah D. Ahlstrom,* Assistant District Attorney, for the
Commonwealth.

LENK, J. The defendant was charged, through six complaints,
with seven counts of violating a domestic protective order,
G. L. c. 209A, § 7, one count of stalking by repeatedly follow-
ing a victim, G. L. c. 265, § 43, one count of making harassing
telephone calls, G. L. c. 269, § 14A, and one count of trespass-
ing, G. L. c. 266, § 120. The Commonwealth by nolle prosequi

dismissed before trial one count of violating a domestic protective order. The jury found the defendant not guilty of making harassing telephone calls but convicted him of all remaining charges. He appeals, claiming that (1) the evidence was insufficient to permit a finding that he violated the stalking statute; (2) the trial judge's instruction on the stalking charge was inadequate to define the offense; (3) it was prejudicial error to allow in evidence the defendant's prior bad acts; and (4) he was deprived of the effective assistance of counsel.

1. *Factual background.* The charges against the defendant stem from allegations made by Elaine Williams, with whom he had an intermittent intimate relationship over a seven-year period beginning in 1983. Williams is the mother of the defendant's daughter, born in 1989. On March 30, 1992, Williams sought and received a domestic protective order against the defendant, which she renewed every year through April 14, 1995.[1]

The charges against the defendant are based on conduct alleged to have occurred over a three-year period from June 30, 1992, through March 12, 1995. While the stalking complaint alleged incidents occurring from February 12 through April 6, 1993, the trial judge limited the incidents relevant to this charge to nine dates in 1993 specified by the Commonwealth in its bill of particulars.[2] The defendant does not challenge the sufficiency of the evidence as to his convictions on six counts of violating a domestic protective order and one count of trespassing, but instead limits his challenge in this regard to the stalking conviction. Accordingly, we need not recite the evidence of incidents other than on the nine dates in 1993 listed in the Commonwealth's bill of particulars. Viewing this evidence in the light most favorable to the Commonwealth, *Commonwealth* v. *Latimore*, 378 Mass. 671, 676-677 (1979), the judge could have found as follows. On four occasions, the defendant went to Williams's workplace and was verbally abusive and threatening to

[1]The restraining orders required the defendant, among other things, not to abuse Williams by harming or attempting to hurt her physically or by placing her in fear of serious physical harm and not to contact her. Copies of such orders, apparently admitted in evidence at trial, were not made a part of the record on appeal.

[2]February 12, 19; March 5, 18, 20, 22, 23; April 4, and 6. Violations of domestic protective orders were, in addition to this time period, alleged to have occurred on June 30, 1992, May 21, June 12, September 9, 1993, and March 12, 1995. The trespass was alleged to have occurred on June 12, 1993.

her. He twice telephoned her and was verbally abusive and threatening. He once stood outside her home in the middle of the night and screamed up to her bedroom window demanding to speak with her. He twice waited for Williams outside her workplace and followed her in his car, speaking to her from his car window.

2. *Stalking.* The defendant argues that this evidence is insufficient to uphold his conviction of stalking insofar as the jury heard evidence of only two instances when the defendant "followed" Williams. The stalking statute reads, in pertinent part:

> "(a) Whoever willfully, maliciously, and repeatedly follows or harasses another person and who makes a threat with the intent to place that person in imminent fear of death or serious bodily injury shall be guilty of the crime of stalking. . . ."

G. L. c. 265, § 43 (1994 ed.).[3] The Commonwealth concedes in its brief that the harassing prong of the stalking statute did not form the basis of the stalking charge against the defendant.[4] The question before us, then, is whether the phrase "repeatedly follows" requires proof of two, or more than two, incidents of "following."

In *Commonwealth* v. *Kwiatkowski*, 418 Mass. 543 (1994), the Supreme Judicial Court held that the separate definition of "harasses" in § 43(*d*) of the stalking statute rendered vague the "repeatedly harasses" prong of § 43(*a*). 418 Mass. at 546-548. Section 43(*d*) defines "harasses" as: "a knowing and willful pattern of conduct or series of acts." In light of this definition, the term "repeatedly" is ambiguous insofar as it may be unclear whether a violation of the "harasses" prong would require *one* "pattern of conduct or series of acts" or *repeated* "patterns of conduct or series of acts." *Id.* at 546-548. The court eliminated uncertainty in the construction of this portion of the statute by holding that, henceforth, "the statutory crime of stalking based on conduct that harasses a victim . . . would involve more than two incidents." *Id.* at 547-548. The court noted further that the

---

[3]General Laws c. 265, § 43, was amended by St. 1996, c. 298, §§ 11 & 12. The amendment is not relevant to this opinion.

[4]Stalking based on proof of the defendant's following of another person must be charged separately from the crime of stalking based on the defendant's repeatedly harassing another person. *Commonwealth* v. *Kwiatkowski*, 418 Mass. 543, 548 n.5 (1994).

words "repeated" or "repeatedly," which it described as ambiguous, can in some circumstances mean "simply more than once" and, in others, "more than twice. . . . The answer, of course, often depends on the context in which the word is used." *Id.* at 548 n.6.

Two years later, in *Commonwealth* v. *Wotan,* 422 Mass. 740 (1996), the court addressed the scope of the "repeatedly" element of G. L. c. 269, § 14A (1994 ed.).[5] That statute makes it a misdemeanor to telephone someone repeatedly solely to harass, annoy or molest them. The court, noting that it had in *Kwiatkowski* previously characterized the term "repeatedly" as being ambiguous and context dependent, prospectively construed the telephone harassment statute as requiring three or more calls. Because defendant Wotan had been charged in the complaint with having made two telephone calls, and the statutory term "repeatedly" was ambiguous when applied to the facts of the case, the court reversed Wotan's conviction, according her the benefit of the statutory ambiguity. *Id.* at 742 n.4, 743.

The term "repeatedly" in the context of "repeatedly follows" is no less ambiguous than in the context of "telephones repeatedly" or "repeatedly harasses." It admits of the meanings "more than once" and "again and again," the former suggesting that two incidents would suffice, the latter suggesting at least three. We conclude that, henceforth, the statutory crime of stalking based on following a victim repeatedly will require more than two incidents of following. The defendant here was convicted on the basis of only two incidents of following. According him the benefit of the statutory ambiguity, his conviction for stalking cannot stand. *Commonwealth* v. *Kwiatkowski,* 418 Mass. at 547, citing *Opinion of the Justices,* 378 Mass. 822, 826 (1979). *Commonwealth* v. *Wotan,* 422 Mass. at 742-743, citing *Commonwealth* v. *Gagnon,* 387 Mass. 567, 569 (1982), cert. denied, 461 U.S. 921 and 464 U.S. 815 (1983). See *Commonwealth* v. *Roucoulet,* 413 Mass. 647, 652 (1992). We need not reach the claimed inadequacy of the judge's instruction in this regard.

3. *Other issues.* The defendant also contends that the judge erred in admitting certain evidence of his prior bad acts and that his counsel provided him with ineffective assistance. We see no merit in the latter contention, apparently raised for the first time

[5]General Laws c. 269, § 14A, states in relevant part, "Whoever telephones another person, or causes any person to be telephoned, repeatedly, for the sole purpose of harassing, annoying or molesting such person . . . ."

on appeal, since the defendant has neither shown that counsel's actions fell measurably below that which might be expected of an ordinary, fallible lawyer, nor that better work would have accomplished anything material for his defense. See *Commonwealth* v. *Saferian,* 366 Mass. 89, 96 (1974); *Commonwealth* v. *Satterfield,* 373 Mass. 109, 115 (1977).

As to the evidentiary issue, it similarly is without merit. The complained of evidence includes: (a) prior uncharged acts of violence against Williams and their minor child; (b) the defendant's previous incarceration; (c) the defendant's offering of a false name to the police upon his arrest; and (d) an uncharged act of violating a "stay away" provision of a domestic protective order by appearing at Williams's house on Thanksgiving Day. Setting to one side the marginal adequacy of appellate argument in his brief on this issue, as well as whether the defendant timely objected to the admission of all such evidence and stated adequately to the trial judge the grounds for inadmissibility he now claims on appeal, we discern no error in the admission of this evidence requiring the reversal of the defendant's remaining convictions for trespassing and violation of domestic protective orders.

To be sure, "[e]vidence of [prior bad acts] is not admissible to prove bad character." *Commonwealth* v. *Hoffer,* 375 Mass. 369, 372 (1978). It may, however, be admissible for other relevant purposes. *Commonwealth* v. *Rodriguez,* 425 Mass. 361, 370 (1997). So long as the probative value of such evidence is not substantially outweighed by the danger of prejudice — a matter for the trial judge to determine — we will not disturb its admission absent palpable error. *Ibid. Commonwealth* v. *Robertson,* 408 Mass. 747, 750 (1990). See *Commonwealth* v. *McGeoghean,* 412 Mass. 839, 841 (1992). We discern no such palpable error here.

The defendant's prior acts of violence against Williams, if not those against their daughter, to the limited extent admitted in evidence, were relevant to and probative of either or both the stalking and c. 209A charges.[6] The Commonwealth is entitled to present to the jury, in a case brought under c. 265, § 43, "evidence of the totality of the defendant's conduct toward the victim." *Commonwealth* v. *Matsos,* 421 Mass. 391, 392 n.3

---

[6]The defendant moved jointly with the Commonwealth to consolidate all six complaints for trial and did not seek to limit the evidence admitted over objection to any particular count or charge.

(1995). Further, the challenged evidence of violence against Williams tends to prove that the defendant made threats to her with the intent to place her in fear of death or serious bodily injury. As to the c. 209A charges, the evidence was relevant to prove that Williams had a reasonable fear of imminent physical harm at the hands of the defendant. See *Commonwealth* v. *Gordon*, 407 Mass. 340, 351 (1990); *Commonwealth* v. *Robicheau*, 421 Mass. 176, 180 n.4 (1995).

Evidence of the defendant's prior incarceration, much of which was introduced by defense counsel apparently for tactical reasons, was in certain respects cumulative and, in others, was relevant to establish the background and length of the relationship between the defendant and Williams.[7]

A police officer testified that when he arrested the defendant on September 16, 1993, pursuant to a warrant, the defendant provided a false name. This testimony, upon objection, was followed by a colloquy with the judge who precluded further inquiry along this line and permitted defense counsel thorough cross-examination. We note that the defendant did not move to strike this challenged evidence, which came in before the defendant lodged his objection. In view of the circumscribed nature of this evidence and the overwhelming evidence of the defendant's guilt, we do not think its admission prejudiced the defendant. Likewise, while evidence that the defendant was on one occasion violent to his minor child and that Williams for this reason terminated the defendant's visits with the child was perhaps of attenuated relevance, we do not think admission of this evidence was palpable error or prejudiced the defendant so as to require reversal of his convictions.

Finally, the defendant did not object at trial to the admission of his uncharged Thanksgiving Day violation of the c. 209A order. Its admission did not create a substantial risk of a miscarriage of justice in view of other overwhelming evidence of his guilt. *Commonwealth* v. *Freeman*, 352 Mass. 556, 564 (1967).

The judgment on the indictment charging stalking is reversed,

---

[7]The defendant also did not request a limiting instruction as to any prior bad conduct evidence of which he now complains. "[T]he law does not require a judge to give limiting jury instructions regarding the purpose for which evidence is offered unless so requested by the defendant." *Commonwealth* v. *Leonardi*, 413 Mass. 757, 764 (1992).

and the verdict is set aside. The remaining judgments are affirmed.

*So ordered.*