COMMONWEALTH *vs.* MILFORD JENKINS.

No. 98-P-162.

Suffolk. February 22, 1999. - July 14, 1999.

Present: GREENBERG, LAURENCE, & BECK, JJ.

*Stalking. Practice, Criminal,* Required finding, Instructions to jury. *Statute,* Construction. *Words,* "Knowing."

At the trial of a complaint for stalking in violation of a domestic protective order, G. L. c. 265, § 43, as amended by St. 1996, c. 298, § 11, any errors in the judge's instructions to the jury did not create a substantial risk of a miscarriage of justice and the prosecution's evidence was sufficient to warrant the judge's denial of the defendant's motion for a required finding of not guilty. [288-292]

COMPLAINT received and sworn to in the Dorchester Division of the District Court Department on November 18, 1996.

The case was tried before *R. Peter Anderson,* J.

*Richard P. Heartquist* for the defendant.

*Christopher Pohl,* Assistant District Attorney, for the Commonwealth.

GREENBERG, J. Milford Jenkins; the defendant, appeals from his conviction of stalking in violation of a domestic protective order.[1] At trial before a jury of six, the defendant timely moved for a required finding of not guilty. Mass.R.Crim.P. 25(a), 378 Mass. 896 (1979). On appeal, he argues that he was entitled to a required finding of not guilty because the Commonwealth proved two, not three, incidents of following as required to sustain a conviction for stalking.

"The evidence in the Commonwealth's case would have warranted the jury in finding the following facts." *Commonwealth* v. *Merola,* 405 Mass. 529, 533 (1989). On November 15, 1996, after a dispute earlier in the day the defendant, in violation of a

---

[1]The defendant was also convicted of assault and battery, threats, and violation of a protective order. He does not appeal from those decisions.

restraining order, went inside his wife's home and slammed her head against a door frame. By the time she regained consciousness, she found the defendant had left the house. Because there was not enough time before she had to start her school van run, she did not call the police at that time.

Later that afternoon, as she was driving on Epsom Street in the Hyde Park area of Boston, she saw the defendant again. She passed his car on the way to her next stop, where another angry confrontation took place. This time, he shouted, "Everybody's always doing this to [me]," as he followed her as she escorted a child to the entrance of the child's house. By the time she rang the doorbell, he was back in his car, driving off. She got back in the van and drove off to complete her run. At the next stop, a day care home, the defendant reappeared, got out of his vehicle, pounded with his fists on her windows, and began yelling at her. He asked her to roll down her window and talk to him and said, "[B]efore this night is over, you're going to talk to me." Alarmed by his irrational conduct, she drove away. The defendant followed her briefly. As she pulled up in front of her next stop, the defendant drove up, pulling up to her bumper, and shouted, "You're going to talk to me one way or the other."

After dropping off the last passenger, she saw a police officer and pulled up behind his cruiser. The defendant appeared, drove past her, and took off in another direction. Escorted by the officer to the station, she made out a police report. That evening the defendant left her alone.

Two days later, on November 17, at about 10 A.M., she found her van ransacked at the garage where she had left it for repairs. The passenger seats were dislodged and papers were strewn everywhere. A letter from the defendant was inside. Upon reclaiming the van, she drove to her home and picked up two boys, the sons of her girlfriend, who were about to help their mother move furniture. As she drove several blocks to her home with the boys inside the van, she saw the defendant appear "out of nowhere." He tailgated her van until she came to a red traffic light. The defendant jumped out of his vehicle and essentially repeated the performance of November 15. At one point, he punched the window with such vehemence that she thought it would shatter. She and her passengers were frightened by the defendant's behavior. When the traffic light changed, she drove to the police station to report this latest incident.

Following this, she picked up her girlfriend and headed

toward home. The defendant turned up again — this time with his brother — talking to one of the complainant's neighbors. She got out of her van and ran toward her house while the defendant shouted and yelled obscenities at her.

The defendant was arrested on November 18, 1996. The next day his wife went to court and persuaded a judge to modify the 209A order from a no abuse order to a "no contact" order. The defendant called her from the Nashua Street jail, where he was held pending trial. She refused to accept his calls, but his messages recorded on her answering machine included such threats as, "Don't worry, you're going to lose everything." During the following three weeks, similar telephone calls to her home by the defendant contained the same threats.

On appeal, the defendant argues only that the Commonwealth did not prove the requisite number of incidents of following to support a conviction for stalking, but fails to note that, while the complaint appropriately charged under the then newly enacted amendment to G. L. c. 265, § 43,[2] the judge, for the most part, charged under the prior version[3] of the statute.[4] The later version of the statute conflates the two separate types of stalking found in the earlier version, following and harassing,[5] into one general definition and, in addition, requires that the Com-

---

[2] The 1996 version of the statute provides as follows: "(*a*) Whoever (1) willfully and maliciously engages in a knowing pattern of conduct or series of acts over a period of time directed at a specific person which seriously alarms or annoys that person and would cause a reasonable person to suffer substantial emotional distress, and (2) makes a threat with the intent to place the person in imminent fear of death or bodily injury, shall be guilty of the crime of stalking . . . ." St. 1996, c. 298, § 11.

[3] General Laws c. 265, § 43, as in effect prior to St. 1996, c. 298, § 11, read as follows: "Whoever willfully, maliciously, and repeatedly follows or harasses another person and who makes a threat with the intent to place that person in imminent fear of death or serious bodily injury shall be guilty of the crime of stalking." In regard to harassing, the statute further stated that, " '[H]arrasses' means a knowing and willful pattern of conduct or series of acts over a period of time directed at a specific person, which seriously alarms or annoys the person. Said conduct must be such as would cause a reasonable person to suffer substantial emotional distress."

[4] We have authority to consider an issue apparent on the record of a criminal case that is not properly preserved for appellate review and is not argued in any party's appellate brief, at least insofar as whether a substantial miscarriage of justice may have occurred. See *Commonwealth* v. *Simpson*, 428 Mass. 646, 648 (1999). We note, however, that the Commonwealth does address the issue in its brief.

[5] Under the 1992 version of the statute, "[s]talking based on proof of the

monwealth prove for all types of stalking and not only for harassing behavior (1) that the defendant engaged in a *knowing* pattern of conduct or series of acts *over a period of time* (added language emphasized); (2) that the conduct or acts must "seriously alarm[ ] or annoy[ ] [a] person"; and (3) "would cause a reasonable person to suffer substantial emotional distress."[6]

The Legislature's actions followed *Commonwealth* v. *Kwiatkowski*, 418 Mass. 543, 546-547 (1994), where the Supreme Judicial Court held that G. L. c. 265, § 43, as inserted by St. 1992, c. 31, was facially unconstitutional in regard to harassing behavior. Under the 1992 version of the statute, it was possible to interpret the crime of stalking as requiring "repetition of either a pattern of conduct or a series of acts," rather than a "single pattern of conduct or single series of acts" in addition to the other elements of the crime. *Ibid.* At the same time, the court interpreted the statute prospectively and defined the crime of stalking based on conduct that harasses as follows: "A person shall be guilty of the crime of stalking if that person (1) wilfully and maliciously engages in a knowing pattern of conduct or series of acts over a period of time directed at a specific person which seriously alarms or annoys that person and would cause a reasonable person to suffer substantial emotional distress and (2) also makes a threat with the intent to place that person in imminent fear of death or bodily injury." *Id.* at 547-548. The court further stated that "[a] pattern or a series in the context of th[e] statute would involve more than two incidents." *Id.* at 548. In *Commonwealth* v. *Martinez*, 43 Mass. App. Ct. 408, 410 (1997), this court held that two or more incidents of "following" were required under the 1992 version of the statute to support a stalking conviction.

When the Legislature amended the statute in 1996, see note 2, *supra*, it adopted the language in *Kwiatkowski, supra*, and, as noted above, eliminated the distinction between harassing and following conduct.[7] The Legislature appeared to recognize that

---

defendant's following of another person [had to be] charged separately from the crime of stalking based on the defendant's repeatedly harassing another person." *Commonwealth* v. *Martinez*, 43 Mass. App. Ct. 408, 410 n.4 (1997).

[6]In 1997, the statute was again amended to delete subsection (*d*) that had included the definition of "harasses" which the Supreme Judicial Court had found problematic in *Commonwealth* v. *Kwiatkowski*, 418 Mass. 543, 546-547 (1994). That subsection had also included the then redundant language regarding emotional distress which the 1996 amendment had included in revised subsection (*a*).

[7]The 1996 amendment included other changes not relevant to this opinion.

offenders subject their victims to a diverse range of offensive conduct that should not be pigeonholed into the separate categories of following and harassing. At the same time, by adopting the language set forth in *Kwiatkowski, supra,* the Legislature implicitly incorporated the court's interpretation of stalking as requiring only one pattern of conduct or one series of acts but three separate incidents to sustain a conviction for stalking. *Id.* at 546.

Here, the judge charged the jury under the "following" aspect of the 1992 version of the statute and instructed as follows: (1) "that over a period of time,[8] the defendant repeatedly followed his wife"; (2) "that he did so willfully and maliciously"; (3) "that the defendant also made a threat during that period of time, with the intention of placing [his wife] in immediate fear of death or bodily injury."[9] The judge also instructed that "it has to be at least three different occasions that [the defendant] appeared to be following [the complainant]." The judge, however, did not include the changes noted above. He thus omitted (1) that the defendant had to engage in a "knowing" pattern of conduct or series of acts; (2) that the acts should be such as to cause a reasonable person to suffer substantial emotional distress; and (3) that those acts did in fact seriously alarm or annoy the victim. Because the defendant did not object to the charge at trial, or even directly in his brief, we review the omission to see if it created a substantial risk of a miscarriage of justice. See *Commonwealth* v. *Kushner,* 43 Mass. App. Ct. 918, 918 (1997).

We believe that the judge's failure to include the word "knowing" is of no import. While, in the usual course, the Legislature does not include words in statutes as mere surplusage, we find it hard to decipher what the word "knowing" adds to the words "willfully and maliciously" in the context of this statute. Compare *Commonwealth* v. *Apalakis,* 396 Mass. 292, 298-299 (1985). "Wilfulness requires a showing that the

---

[8]Even though under the 1992 version of the statute the "over a period of time" language only applied to harassing behavior, the judge's instructions included the language mandated under the 1996 version of the statute for the types of behavior encompassed by that statute.

[9]Under the 1992 version of the statute, the victim had to be placed in fear of death or *serious* bodily injury, while under the 1996 version, only fear of death or bodily injury was required. While this instruction decreased the Commonwealth's burden at trial, it was the correct instruction under the 1996 version of the statute.

defendant intended both the conduct and its harmful consequences; wilful conduct is 'intentional and by design in contrast to that which is thoughtless or accidental.' Malice requires a showing that the defendant's conduct was 'motivated by "cruelty, hostility or revenge." ' " *Commonwealth* v. *Armand*, 411 Mass. 167, 170 (1991). It appears then that wilful and malicious conduct must also be "knowing" conduct. See *Commonwealth* v. *Lawson*, 46 Mass. App. Ct. 627, 629-630 (1999) (" '[k]nowingly' when used in a criminal statute 'commonly imports a perception of the facts requisite to make up the crime' " [citations omitted]).

We also find no merit to the defendant's contention that the Commonwealth proved only two incidents of following rather than, at a minimum, three such incidents. The defendant here engaged in a series of separate acts on November 15 when he would appear, disappear, and then reappear. One time, the victim passed the defendant's car as she was driving to her first stop, he reappeared when she arrived at the stop, got out of his car, and followed her as she escorted a child to the entrance of the child's home. At another stop, he was waiting for her when she arrived, pounded on her window, yelled at her, and as she drove away followed her for a short while down the street. When she drove up to her next stop, the defendant drove up behind her and pulled up to her bumper, yelling once again. As she drove away from her last stop, she saw a police officer, pulled in behind his cruiser, and saw the defendant drive past her. In addition, on November 17, as she was driving a friend's children, the defendant appeared and began tailgating her until she stopped at a red light. Whereupon, the defendant jumped out of his vehicle and began punching her van window and shouting. These incidents comport with the requirement set forth in the 1996 version of the statute and show that, over a period of time, the pattern or series included at least three incidents of the proscribed behavior.

Finally, the remaining two omissions did not result in a substantial risk of a miscarriage of justice. In the circumstances of this case, there is not "a substantial risk that a person has been convicted for a course of conduct that is not criminal at all." *Commonwealth* v. *Amirault*, 424 Mass. 618, 646-647 & n.21 (1997). Compare *Commonwealth* v. *Thomas*, 401 Mass. 109, 118-119 (1987) (there was a substantial risk of a miscarriage of justice where the judge did not instruct the jury that the

defendant had to have known that the victim was mentally handicapped and it was not relevant that the jury could have so concluded based upon the evidence); *Commonwealth* v. *Noble*, 429 Mass. 44, 47 (1999) (judge's failure to instruct on the use of nondeadly force in response to reasonable fear for safety created a substantial risk of a miscarriage of justice).

Incorrect instructions on an element of a crime have not created a substantial risk of a miscarriage of justice where the defense strategy at trial was incorrect identification, *Commonwealth* v. *Mezzanotti*, 26 Mass. App. Ct. 522, 529 (1988), or self-defense, *Commonwealth* v. *Medina*, 43 Mass. App. Ct. 534, 536 (1997). The defendant here presented an alibi defense at trial, a strategy which the omitted instructions would not have implicated. "In [these] circumstances the erroneous instruction was not 'sufficiently significant in the context of the trial to make plausible an inference that the result might have been otherwise but for the error.' " *Id.*, quoting from *Commonwealth* v. *Miranda*, 22 Mass. App. Ct. 10, 21 (1986).

*Judgment affirmed.*