PD-0659-15
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 7/16/2015 1:39:18 PM
Accepted 7/17/2015 3:01:09 PM
ABEL ACOSTA
CLERK

NO. PD-0659-15

IN THE

# COURT OF CRIMINAL APPEALS

## OF TEXAS

_____

## PAUL HENRI WAGNER, Appellant

v.

## THE STATE OF TEXAS, Appellee

_____

# APPELLANT'S
# PETITION FOR DISCRETIONARY REVIEW

_____

FILED IN
COURT OF CRIMINAL APPEALS

July 17, 2015

ABEL ACOSTA, CLERK

**No. 05-13-01329-CR
In the
Fifth District Court of Appeals at Dallas**

_____

**On appeal from Cause Number MA-1114870-L
In County Criminal Court No. 10
of Dallas County, Texas
Honorable Roberto Canas, Judge Presiding**

_____

**DAN WOOD, JR.**
**ATTORNEY AT LAW**
**4303 N. Central Expressway**
**Dallas, Texas 75205**
**Tel. (214) 559-8815**
**Fax (214) 696-0867**
**Email: danwoodjr@sbcglobal.net**

**VINCENT W. PERINI**
**ATTORNEY AT LAW**
**2501 Oak Lawn Ave., Suite 560**
**Dallas, Texas 75219-4082**
**Tel. (214) 750-7477**
**Fax (214) 521-5690**
**Email: vperini@airmail.net**

_Attorneys for Appellant_

**APPELLANT RESPECTFULLY REQUESTS ORAL ARGUMENT**

1

IDENTITIES OF JUDGE, PARTIES AND COUNSEL

Pursuant to the provisions of Rule 68.4(a), Texas Rules of Appellate Procedure, a

complete list of the names of the trial judge, all parties and counsel are as follows:

| | |
|---|---|
| Trial Judge: | Hon. Roberto Canas, County Criminal Court No. 10, Dallas County, Texas |
| Parties: | Paul Henri Wagner, Appellant<br>State of Texas, Appellee |
| Attorneys for the Appellant: | Vincent W. Perini,<br>Trial Counsel and Counsel on appeal,<br>2501 Oak Lawn Ave., Suite 560<br>Dallas, TX 75219-4082<br><br>Dan Wood, Jr., Counsel on appeal,<br>4303 N. Central Expressway<br>Dallas, TX 75205 |
| Attorneys for the State: | Hon. Susan Hawk<br>Criminal District Attorney<br>Crowley Courts Building<br>133 N. Riverfront Blvd., LB 19<br>Dallas, Dallas County, TX 75207<br><br>Ms. Josi Diaz, Asst. Criminal District Attorney, Trial Counsel<br><br>Ms. Christine S. Ou, Asst. Criminal District Attorney, State's Counsel on Appeal |

# TABLE OF CONTENTS

**INDEX OF AUTHORITIES**............................................................................... 4

**STATEMENT REGARDING ORAL ARGUMENT**..................................... 5

**STATEMENT OF THE CASE**...................................................................6

**STATEMENT OF PROCEDURAL HISTORY**........................................... 7

**QUESTIONS PRESENTED**……..…………………….........................................7-8

### *FIRST QUESTION PRESENTED FOR REVIEW*

**WHAT IS THE CORRECT DEFINITION OF THE PHRASE *"COMMUNICATING…IN A… HARASSING MANNER"* AS USED IN THE STATUTE FOR PROTECTIVE ORDERS IN FAMILY VIOLENCE CASES, AND, AS APPLIED IN THIS CASE, DID IT PENALIZE PROTECTED SPEECH IN VIOLATION OF PETITIONER'S FIRST AMENDMENT RIGHTS? [TEX. PEN. CODE §25.07(A)(1)(A)]…………..... 9**

### *First Reason for Granting Review*

**In its decision, the Court of Appeals adopted a definition of "harass," which conflicts with a decision of the Third Court of Appeals in Austin on the same issue, the definition of the phrase *"communicating… in a…harassing manner."***

### *Second Reason for Granting Review*

**This statute is an important legal tool in family violence cases, and because the conflicting decisions of the Fifth and Third courts of appeal create a wide disparity between the districts, this important question of state law has not been, but should be, settled by the Court of Criminal Appeals.**

### *Third Reason for Granting Review*

**The definition adopted by the court of appeals from a dictionary definition used previously in an earlier Fifth Court of Appeals decision (i.e.*"persistently disturbs, bothers continually, or pesters…"*) is too encompassing and threatens to criminalize otherwise protected speech.**

## *SECOND QUESTION PRESENTED FOR REVIEW*

**WHETHER THIS IS A "CONTENT-BASED" FIRST AMENDMENT CASE AND OUGHT TO HAVE BEEN DECIDED BY A DIFFERENT STANDARD OF REVIEW, "STRICT SCRUTINY" AS ENUNCIATED IN THE CASE OF *EX PARTE LO*…....................................................................*14***

## *THIRD QUESTION FOR REVIEW*

**IF STRICT SCRUTINY IS THE PROPER STANDARD OF REVIEW, WHETHER THE CORRECT STANDARD OF REVIEW CAN BE WAIVED…………………………………………...…………………14**

### *Reason for Granting Review*

**In rejecting the strict-scrutiny standard of review established in *Ex Parte Lo,* the Court of Appeals emphasized, in effect, that the standard had been waived by appellant. The court also said the decision was based on the language of the statute. That alone should have been the Court's reason. It should not be possible to waive a standard of review.**

**ARGUMENT AND AUTHORITIES** …………………………………………. **9**

**PRAYER FOR RELIEF**..................................................................................... **17**

**CERTIFICATE OF SERVICE**......................................................................... **18**

**CERTIFICATE OF COMPLIANCE** ............................................................. **18**

**APPENDIX**........................................................................................................ **19**

*Wagner v. State,* **No. 05-13-01329-CR (Tex. App.--Dallas, delivered May 5, 2015) (Mem. Op.) (not designated for publication).**

**INDEX OF AUTHORITIES**

**PAGE**

## Cases

*Bynum v. State*, 767 S.W.2d 769 (Tex. Crim. App. 1989)…………………………………...10

*Cain v. State*, 947 S.W.2d 262 (Tex. Crim. App. 1997) ………………………………….17

*Clark v. State*, 665 S.W.2d 476, (Tex. Crim. App. 1984)……………………………....…...10

*Commission for Lawyer Discipline v. Benton*, 980 SW2d 425 (Tex. 1998)…………….. 11,12

*Ely v. State*, 582 S.W.2d 416, (Tex.Crim. App. 1979)…………………………………………14

*Ex Parte Lo*, 424 S.W.3d 10 (Tex. Crim. App. 2013) ………………………………...14,15,16

*Garcia v. State*, 212 S.W.3d 877, (Tex. App. – Austin 2006)……………….…11,12,13 Fn. 9

*Kramer v. Price*, 712 F. 2d 174 (5th Cir. 1983), affirmed *en banc,*

 723 F. 2d 1164 (5th Cir. 1984)……………………….....................................................10

*Long v. State*, 931 S.W. 2d 285 (Tex. Crim. App. 1996)……………………………….…10

*Marin v. State*, 851 S.W.2d 275 (Tex. Crim. App. 1993) ………………………………...17

*Patton v. State*, 835 S.W.2d 684 (Tex. App-Dallas, 1992, no pet.)…………………………11

*Snowden v. State*, 677 A.2d 33, 36 n. 1 (Delaware 1996)…..……………………….……11

*Wagner v. State*, No. 05-13-01329-CR, (Tex.App.-Dallas, delivered May 5, 2015)
 (Mem. Op.) ………………………………………………………………………………. 7

## Statutes and Rules

TEX.PEN. CODE §25.07 (a)(1)(A)……………………………………………………...…6,11,15

TEX.PEN. CODE 25.07 (g) …….…………….…………………………………………… 10

TEXAS DISCIPLINARY RULES OF PROFESSIONAL CONDUCT Section 3.06 (d)…………..……...12

## Constitutional Provisions

First Amendment to the U.S. Constitution and the Due Process of Law
guarantee of the 14th Amendment to the U.S.Constitution; U.S. CONST.,
AMEND. I, XIV …………………………………………………………….……13 Fn. 1

## Other

Webster's Encyclopedic Unabridged Dictionary 645 (1989) ………………………………11

5

## *STATEMENT REGARDING ORAL ARGUMENT*

The  conflicting definitions of "communicating… in a… harassing manner" in the Third and Fifth courts of appeal, arising from the decision of the Fifth Court of Appeals in this case, set in motion a collision between the law in their respective districts which is more than a mere game of words.  It makes the likelihood of arrest and conviction very different in two large parts of the state involving millions of Texans. Moreover, a First Amendment Freedom of Speech issue is at stake.

Oral argument will help delineate these important matters.

NO. PD-1058-14

IN THE COURT OF CRIMINAL APPEALS

OF TEXAS

PAUL HENRI WAGNER, Appellant

v.

THE STATE OF TEXAS, Appellee

---

**APPELLANT'S PETITION FOR DISCRETIONARY REVIEW**

---

**TO THE HONORABLE JUDGES OF THE COURT OF CRIMINAL APPEALS:**

**NOW COMES,** Paul Henri Wagner, Appellant in this cause, by and through his attorneys of record, Dan Wood, Jr. and Vincent W Perini, and pursuant to the provision of Texas Rules of Appellate Procedure 66, *et seq*., urges this Court to grant discretionary review, and in support will show as follows:

*STATEMENT OF THE CASE*

Appellant was charged by information (CR: 11) with the Class "A" Misdemeanor crime of Violation of a Protective Order prohibition against "communicating with a protected party in a threatening or *harassing* manner," TEX. PEN. CODE §25.07(a)(1)(A) (West 2012). Appellant entered a plea of Not Guilty, and was tried before a jury (RR2: 49). He was found guilty (RR3: 132). By agreement between the State and Defendant, the jury on punishment was waived, and punishment was determined by the Court as follows: 365 days in jail, suspended, and the

7

Defendant placed on community supervision for 24 months, plus a fine of $375.00 (RR3: 139). Judgment was entered (CR: 14-15).

The defendant filed a Combined Motion for New Trial and Motion for Arrest of Judgment, which was timely presented to the Court (CR: 43;RR4: 7). The combined motions were supported by defendant's affidavit (CR: 58-62). A hearing was held on August 29, 2013, after which the trial court denied the motions (RR4: 26). Appellant gave timely Notice of Appeal (CR: 13).

## *STATEMENT OF PROCEDURAL HISTORY*

The Fifth Court of Appeals affirmed Appellant's conviction in its opinion in *Wagner v. State*, No. 05-13-01329-CR, (Tex.App.-Dallas, delivered May 5, 2015) (Mem. Op.) (not designated for publication). This Court granted Appellant's motion for extension of time to file his Petition for Discretionary Review by July 6, 2015. On July 7, 2015, Appellant was allowed an additional 10 days to file a corrected petition. This petition is timely filed.

## **GROUNDS FOR REVIEW**

## **QUESTIONS PRESENTED**

### *FIRST QUESTION PRESENTED FOR REVIEW*

WHAT IS THE CORRECT DEFINITION OF THE PHRASE *"COMMUNICATING... IN A ... HARASSING MANNER"* AS USED IN THE STATUTE FOR PROTECTIVE ORDERS IN FAMILY VIOLENCE CASES, AND, AS APPLIED IN THIS CASE, DID IT PENALIZE PROTECTED SPEECH IN VIOLATION OF PETITIONER'S FIRST AMENDMENT RIGHTS? [TEX. PEN. CODE §25.07(A)(1)(A)].

### *First Reason for Granting Review*

In its decision, the Court of Appeals adopted a definition of "harass," which conflicts with a decision of the Third Court of Appeals in Austin on the same issue, the definition of the phrase *"communicating… in a…harassing manner."*

### *Second Reason for Granting Review*

This statute is an important legal tool in family violence cases, and because the conflicting decisions of the Fifth and Third courts of appeal create a wide disparity between the districts, this important question of state law has not been, but should be, settled by the Court of Criminal Appeals.

### *Third Reason for Granting Review*

The definition adopted by the court of appeals from a dictionary definition used previously in an earlier Fifth Court of Appeals decision (i.e. *"persistently disturbs, bothers continually, or pesters…"*) is too broad in its reach and threatens to criminalize otherwise protected speech.

### *SECOND QUESTION PRESENTED FOR REVIEW*

**WHETHER THIS IS A "CONTENT-BASED" FIRST AMENDMENT CASE AND OUGHT TO HAVE BEEN DECIDED BY A DIFFERENT STANDARD OF REVIEW, "STRICT SCRUTINY" AS ENUNCIATED IN THE CASE OF *EX PARTE LO.***

### *THIRD QUESTION FOR REVIEW*

**IF STRICT SCRUTINY IS THE PROPER STANDARD OF REVIEW, WHETHER THE CORRECT STANDARD OF REVIEW CAN BE WAIVED.**

### *Reason for Granting Review*

In rejecting the strict-scrutiny standard of review established in *Ex Parte Lo,* the Court of Appeals emphasized, in effect, that the standard had been waived by appellant. The court also said the decision was based on the language of the statute. That alone should have been the Court's reason. It should not be possible to waive a standard of review.

9

## ARGUMENT AND AUTHORITIES

### *FIRST QUESTION PRESENTED FOR REVIEW*

WHAT IS THE CORRECT DEFINITION OF THE PHRASE *"COMMUNICATING…IN A… HARASSING MANNER"* AS USED IN THE STATUTE FOR PROTECTIVE ORDERS IN FAMILY VIOLENCE CASES, AND, AS APPLIED IN THIS CASE, DID IT PENALIZE PROTECTED SPEECH IN VIOLATION OF PETITIONER'S FIRST AMENDMENT RIGHTS? [TEX. PEN. CODE §25.07(A)(1)(A)].

### *First Reason for Granting Review*

In its decision, the Court of Appeals adopted a definition of "harass," which conflicts with a decision of the Third Court of Appeals in Austin on the same issue, the definition of the phrase *"communicating… in a…harassing manner."*

### *Second Reason for Granting Review*

This statute is an important legal tool in family violence cases, and because the conflicting decisions of the Fifth and Third courts of appeal create a wide disparity between the districts, this important question of state law has not been, but should be, settled by the Court of Criminal Appeals.

### *Third Reason for Granting Review*

The definition adopted by the court of appeals from a dictionary definition used previously in an earlier Fifth Court of Appeals decision (i.e.*"persistently disturbs, bothers continually, or pesters…"*) is too broad in its reach and threatens to criminalize otherwise protected speech.

The Court of Appeals opinion sets out the facts in its opinion. *Wagner v. State*, No. 05-13-01329, pp. 2 – 5 (Tex. App. – Dallas, delivered May 5, 2015) (Mem. Op.) (not designated for publication).

Briefly summarizing the record, however, Appellant and his wife, Laura, were separated and she wanted a divorce. They had a young daughter. Laura obtained a protective order. Although

10

the court had the authority to prohibit all communication except through surrogates, the protective order did not prohibit Petitioner's communicating with his wife so long as the communication was not "…*in a threatening or harassing manner.*" Such a protective order is enforceable pursuant to a criminal statute, the language of which is identical to the court's protective order. *See*, TEX. PEN. CODE §25.07(g) (West 2012).

In the twenty-two days following issuance of the Protective order and until she called the police, Appellant and his wife communicated regularly with one another – but not every day – about bread-and-butter family matters such as medical coverage, the child's sickness following a trip to Mexico, unemployment, and his new job, but also about his hope to reconcile with her. Most of the communications were by email and text message, and photocopies of both were offered and admitted in evidence. The record does not show that Appellant was abusive or profane. The record does not show that Appellant berated his wife or that he ever called or left messages at odd hours. The record shows he never communicated with her in a threatening manner.

Appellant's entreaties to Laura were usually at the end of a communication about mundane family subjects. The couple belonged to a nondenominational "full gospel" church, and Appellant's speech to his wife was often couched in religious language.

On direct appeal Appellant complained that the absence of a definition – in the Fifth District – of the phrase "communicating… in a… harassing manner" rendered the statute vague and overbroad as applied to petitioner in violation of his First Amendment rights.

"A statute is considered impermissibly overbroad if, in addition to prescribing activities which may constitutionally be forbidden, it sweeps within its coverage speech or conduct which is protected by the First Amendment." *Clark v. State*, 665 S.W.2d 476, 481 (Tex. Crim. App. 1984); *and see, Long v. State*, 931 S.W.2d 285, 287-88 (Tex. Crim. App. 1996); *Kramer v. Price*,

11

712 F. 2d 174, 177 (5th Cir. 1983), affirmed *en banc,* 723 F. 2d 1164 (5th Cir. 1984); *Bynum v. State*, 767 S.W.2d 769, 772-73 (Tex. Crim. App. 1989).

In response, the Court of Appeals ruled that the definition applicable for judging the lawfulness of petitioner's speech to his wife would be the dictionary definition of harassment found in *Webster's Encyclopedic Unabridged Dictionary 645 (1989)*, as follows: "[A] person harasses another when he *persistently disturbs, bothers continually, or pesters that person* (emphasis added)." Mem. Op. at 7

The court explained that it was appropriate to consult standard dictionaries for the meaning of undefined statutory terms and, further, that this dictionary definition had been used previously by the Fifth Court of Appeals in *Patton v. State*, 835 S.W.2d 684 (Tex. App-Dallas, 1992, no pet.). Mem. Op. at 7, Fn. 5.

It is true that the dictionary definition had been used. However, there had been neither an argument about statutory definitions in the *Patton* case, nor any kind of constitutional challenge, for vagueness and overbreadth or otherwise. That case could have been decided without the dictionary.

In his opening brief, Appellant advocated adoption of the definition enunciated by the Third Court of Appeals in the case of *Garcia v. State*, 212 S.W.3d 877, 890-91 (Tex. App. -- Austin 2006, no pet.). It was a case directly in point. The defendant in *Garcia* challenged Penal Code §25.07 (a)(1)(A) as facially overbroad and vague in violation of the First and Fourteenth amendments. As in the case at bar, the conduct at issue was "harassing" communication. *Garcia*, at 889.

To avoid finding the provision unconstitutional, and in search of an adequate definition of "harass," the Third Court of Appeals turned to the Supreme Court of Texas, which had faced a

12

similar problem in a case involving a lawyer accused of violating a disciplinary rule. *Commission for Lawyer Discipline v. Benton*, 980 S.W. 2d 425 (Tex. 1998). The lawyer had been sanctioned for communicating with jurors following their verdict in a personal injury case in a manner found to have been "calculated merely to *harass* or embarrass the juror…" (Emphasis added). *Id. and* s*ee*, TEX. DISC. R. PROF. COND. 3.06 (d). The Supreme Court first observed that, "in colloquial usage," "harass" may be considered vague. In a thirty-one page opinion, with concurrences and dissents, the Supreme Court avoided finding constitutional infirmity by fashioning a definition of "harass" as follows:

(1)  a course of conduct,

(2)  directed at a specific person or persons,

(3)  causing or tending to cause substantial distress, and

(4)  having no legitimate purpose.

*Benton* at 439.

The Third Court of Appeals added a "*reasonable person*" standard to the Supreme Court's definition to further avoid vagueness, as follows: "the course of conduct must be such as would cause a reasonable person to suffer substantial emotional distress and must actually cause substantial emotional distress to the person." This is in harmony with some of the cases cited by the Supreme Court.  *See, e.g.*, *Snowden v. State*, 677 A.2d  33, 36 n. 1 (Delaware 1996), (as cited in *Benton* at 439); *Garcia v. State*, 212 S.W.3rd 877, 893, n. 9 (Tex. App. -- Austin 2006, no pet.).

The Dallas Court of Appeals below rejected this definition, creating the conflict between the districts.

13

The conflict between the Third Court of Appeals and the Fifth Court of Appeals definitions of "harass" is not insubstantial. The Austin court's definition is thoughtfully crafted and nuanced. The Dallas court's definition, on the other hand, is simplistic. The practical effect of this disparity will result in different outcomes. For North Texas counties in the vicinity of the Red River (those in the Fifth District) there now is a low threshold for probable cause, prosecution, and conviction for violating that prohibition in protective orders. Merely "bothering" a protected individual not only brings the possibility of a Class A Misdemeanor conviction, but, even more significant, it will increase the frequency of jail incarceration and bail bonds. On the other hand, in those 24 counties across the state's midsection, from Bastrop and New Braunfels all the way out to San Angelo and beyond to the Permian Basin (the Third District), the likelihood of handcuffs is less. The Third Courts definition requires a greater degree of culpability for arrest and prosecution. For example, if Petitioner's prosecution had been in the Third District, the evidence would most likely have been found insufficient, because the State would have had to prove that there was no legitimacy whatsoever to Appellant's attempts at reconciliation.

From the standpoint of precision, the Fifth Court of Appeals definition is inferior by comparison. For police, sheriff deputies, prosecutors, and trial courts, its simplicity is unlikely to provide real guidance in deciding these difficult family violence conflicts. It will increase the likelihood of freedom of speech problems.[1]

---

[1] In its opinion the Court of Appeals says that petitioner waived his complaints that Petitioner's freedom of speech rights under the First Amendment (and Fourteenth) to the United States Constitution had been violated. Mem. Op at 9. This was in conjunction with the court's criticism that Appellant had inadequately briefed Freedom of Religion and applicability of the Texas Constitution. Whatever might be said about those, appellant's brief contained citations and analysis about First Amendment vagueness and overbreadth issues (Appellant's Brief, pages 21-

14

WHETHER THIS IS A "CONTENT-BASED" FIRST AMENDMENT CASE AND OUGHT TO HAVE BEEN DECIDED BY A DIFFERENT STANDARD OF REVIEW, "STRICT SCRUTINY" AS ENUNCIATED IN THE CASE OF *EX PARTE LO.*

*THIRD QUESTION PRESENTED FOR REVIEW*

IF STRICT SCRUTINY IS THE PROPER STANDARD OF REVIEW, WHETHER THE CORRECT STANDARD OF REVIEW CAN BE WAIVED.

*Reason for Granting Review*

In rejecting the strict-scrutiny standard of review established in Ex Parte Lo, the Court of Appeals emphasized, in effect, that the standard had been waived by appellant. The court also said the decision was based on the language of the statute. That alone should have been the Court's reason. It should not be possible to waive a standard of review.

*[Appellant will address both the Second and Third Questions here.]*

This Court decided the case of *Ex parte Lo* in the fall of 2013. *Ex parte Lo*, 424 S.W.3d 10 (Tex. Crim. App. 2013). Appellant's Brief and the State's Brief were filed in the spring of 2014. Neither brief cited the *Lo* case. Appellant did so for the first time in his Reply Brief, asserting that it controlled the standard of review in this case and its "strict scrutiny" standard should be the standard of review. The Court of Appeals opinion is correct. Appellant had initially identified the customary standard as applicable, citing *Ely v. State*, 582 S.W.2d 416 (Tex. Crim.

---

22) and a lengthy discussion of the effect on this case of adopting the Third Court of Appeals definition in *Garcia v. State* (Appellant's brief, pages 27-31).

App. 1979). In his Reply Brief, Appellant reasoned that the *Ex parte Lo* standard should apply instead, because, as Appellant asserted, this case was "content-based." (Appellant's Reply Brief, pp. 1- 4)

In a Supplemental Brief allowed by the court, the State took issue. The State argued this case was a "content-neutral" rather than "content-based" statute, and strict scrutiny was inapplicable, because Penal Code § 25.07(a)(1)(A) confers benefits or imposes burdens on speech without reference to the ideas or views expressed. State's Supp. Brief, pp. 2-3. The State insisted that that "harassing" communications in the Protective Order statute "depended upon the frequency and effect of the communication, not their content." State's Supp. Brief, p. 5. In a footnote the State notes that the "manner and means" in the information speaks only of the frequency of the communications, not the content. State's Supp. Brief, p. 5, Fn. 3. This overlooks the Information's language which accuses the defendant of communicating "in a threatening and harassing manner…" And other language in the charging document that his actions were "in violation of an order issued by the 292nd Court in Dallas County," i.e. The Protective Order (CR: 11). Of course, the Protective Order charged Petitioner with "communicating… in a… *harassing* manner." The word "harassing" modifies the manner of communications, and can describe content as well as frequency.

As if to illustrate this ambiguity, the Dallas Court of Appeals, while arguing in agreement with the State that the content of Petitioner's communications were irrelevant, nevertheless wrote "[T]he statute clearly protects Laura from appellant's repeated, unsolicited, and unwelcome communications *in which he professes his love and begged her not to divorce him*" (Emphasis added). Mem. Op. at 9. It should be clear, despite arguments to the contrary, content mattered in this case.

In a footnote to its opinion, the court below chose to apply the customary standard with the burden on the defendant to establish unconstitutionality. Mem. Op. at p. 6, Fn. 4. As explanation, the footnote explained that appellant had first raised the argument about *Ex parte Lo* and "strict scrutiny" in his reply brief. Moreover, it said there had been no discussion by Appellant or authority to establish that this case was "content-based." On the contrary, Appellant had cited and examined the language in *Ex Parte Lo* that "when the government seeks to restrict and punish speech based on its content, the usual presumption of constitutionality is reversed." Further, petitioner argued in his Reply Brief that in "this case the prosecution seeks to punish speech it "disfavored" "based on the ideas expressed."

Finally in the opinion footnote, the Court of Appeals said it was rejecting the *Lo* strict scrutiny standard because "the statute itself does not address the content of communications.…" This is a mistake. It ignores or overlooks the statutory language which prohibits communication in a "harassing manner." Both the state and the Court of Appeals arbitrarily insist that this statutory phrase refers only to the frequency of communication and not it's content. Yet there is no statutory explanation of what "harassing manner" means. That is the problem. It is the central issue in this appeal. The assertions of the state and the court are belied by their own arguments which invariably discuss content, e.g. appellant's begging his wife to postpone divorce and give him a chance to prove that he had changed. The opinion is replete with descriptions of the content of appellant's communications to his disaffected wife. Even the dictionary definition embraced by the court (Mem. Op.p.7, Fn. 4) bespeaks content. For example, the words "disturbs" and "bothers" can as easily refer to the content of frequent messages as to frequency alone.

The Court of Appeals was in error when it rejected the content-based strict scrutiny standard, notwithstanding the court's assertions that the standard had been waived by the appellant. *See, e.g., Marin v. State*, 851 S.W.2d 275, 279-80 (Tex. Crim. App. 1993), overruled on other grounds by *Cain v. State*, 947 S.W.2d 262, 264 (Tex. Crim. App. 1997). The only substantive explanation given by the court is that somehow the statute itself does not show it is "content-based." As shown in the foregoing paragraphs, appellant disputes that argument. However, even if the statute by its own terms is found to have fallen short of requiring the "strict scrutiny" standard, the court's holding rejecting strict scrutiny is contrary to the spirit of the First Amendment's requirements as declared in *Ex Parte Lo.*

> *"If it is necessary to look at the content of the speech in question to decide if the speaker violated the law, then the regulation is content-based…[F]or example, if the statute makes it a crime for an adult to communicate with a minor via the Internet, that is a content-neutral law. But if the statute prohibits an adult from communicating with a minor in a sexually explicit manner, that is a content-based law because one has to look to the content of the communication to decide whether the person violated the law."*

*Ex Parte Lo, p. 7. Fn.12,*

That statement could be applicable as well to the case at bar, because, as shown again and again in the court's opinion, "one has to look at the content of the communication" to determine if the statute is violated. Whether *Penal Code Sec. 25.07(a)(1)(A)* is constitutionally infirm should have been determined by the strict-scrutiny standard.

## PRAYER FOR RELIEF

***WHEREFORE, PREMISES CONSIDERED,*** Appellant prays that this Court grant discretionary review and, after full briefing on the merits, issue an opinion reversing the Court of Appeals' judgment and remand and for other proceedings consistent with this Court's opinion.

Respectfully submitted,

DAN WOOD, JR.
ATTORNEY AT LAW
4303 N. Central Exp.
Dallas, Texas 75205
Tel. (214) 559-8815
Fax (214) 696-0867
danwoodjr@sbcglobal.net

VINCENT W. PERINI
ATTORNEY AT LAW
2501 Oak Lawn Ave., Suite 560
Dallas, Texas 75219-4082
Tel. (214) 750-7477
Fax (214) 521-5690
vperini@airmail.net

By:  /Vincent W. Perini/
Vincent W. Perini
State Bar No. 15782000

ATTORNEYS FOR APPELLANT

**CERTIFICATE OF SERVICE**

I certify the foregoing Petition for Discretionary Review was served upon the State of Texas by sending a true and correct copy to the Criminal District Attorney of Dallas County and the State Prosecuting Attorney via mail to: Hon. Susan Hawk, Criminal District Attorney, Attn: Appellate Section, Frank Crowley Court Bldg., 133 N. Riverfront, LB 19, Dallas, TX 75207; Hon. Lisa C. McMinn, State Prosecuting Attorney, P.O. Box 13046, Austin, TX 78711-3046, on July 16, 2015.

/Vincent W. Perini/

_____
Vincent W. Perini
Attorney for Appellant

**CERTIFICATE OF COMPLIANCE**

In accordance with Rule 9.4(i) of the Texas Rules of Appellate Procedure, I certify that the total word count for the foregoing Petition for Discretionary Review is 3,412 words as shown by the word count function of the computer program, MS Word 2007, used to generate the document.

/Vincent W. Perini/

_____
Vincent W. Perini
Attorney for Appellant

---

**APPENDIX**

---

- *Paul Henri Wagner v. State*, *No. 05-13-01329-CR (Tex. App.--Dallas, delivered May 5, 2015)* **(Mem. Op.) (not designated for publication).**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-13-01329-CR

**PAUL HENRI WAGNER, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the County Criminal Court No. 10**
**Dallas County, Texas**
**Trial Court Cause No. MA-1114870L**

## MEMORANDUM OPINION

Before Justices Francis, Evans, and Stoddart
Opinion by Justice Evans

Paul Henri Wagner appeals his misdemeanor conviction for violating a protective order.

In three issues, appellant challenges (1) the constitutionality of the statute and information under

which he was charged, (2) the sufficiency of the evidence to support his conviction, and (3) the

admission of certain evidence. Concluding that appellant's issues lack merit, we affirm the trial

court's judgment.

### BACKGROUND

This matter arises out of a series of communications appellant sent to Laura, his wife at

the time, during the three-week period immediately following the issuance of a protective order

prohibiting him from "[c]ommunicating directly with [Laura] . . . in a threatening or harassing

manner."[1]  Viewed in the light most favorable to the verdict, the evidence at trial revealed the following events.

One day after the order was signed, Laura sent appellant a text message stating, "I pray for u[sic] everyday [sic].  That you would be humbled in the sight of the Lord and redeemed."  The next day, November 18, appellant texted Laura that he prayed for her every day too.  The two exchanged texts about whether appellant had obtained a job and family finances, and appellant then inquired whether Laura had an attorney.  When Laura did not reply to this text, appellant texted, "Are you still wanting to talk?"  She responded, "I think it would be best to not talk except through email."  Appellant responded "Why?" to which Laura replied, "Please just respect my wishes."

The following day, appellant emailed Laura about bills, to profess his love for her, and express his desire to be reconciled.  On November 23, appellant texted, "I miss you so much Laura."  She did not respond.  On November 25, appellant sent Laura a text about whether he could pay the daycare bill online.  The two exchanged a few texts about financial matters, and then appellant sent Laura a text expressing his desire "to be Ephesians 5:25-30" for her, how much he loved and missed her, and wished that "God would soften your heart towards me."  Laura did not reply to the text.

On November 26, Laura texted appellant about whether his medical insurance was still in effect.  Instead of answering the question directly, appellant asked if she went to the doctor and whether she was alright.  He then texted her, "don't be cold and hard towards me" and "My heart is in so much pain without you.  I can't correspond with you like this anymore.  I'm sorry."

---

[1] The protective order also contains a finding that family violence occurred and that family violence was likely to occur in the foreseeable future.

Only after Laura responded that their daughter needed medicine, did appellant confirm their insurance was suspended.

On November 28, appellant sent Laura several texts asking for bedding and whether Laura had an attorney. Appellant then texted Laura, "It would be so much easier if we could just talk on the phone." When Laura didn't respond, appellant texted, "Can we talk on the phone?" After Laura refused and told appellant she was trying to go to bed, appellant again texted Laura to inquire whether she had a lawyer. Laura responded, "Stop texting me."

On November 30, appellant emailed Laura about money in a bank account and the two exchanged four more emails from November 30 to December 2 about finances. On December 5, however, after he was served with the divorce petition, appellant phoned Laura and left a voicemail in which he was upset and begging her not to divorce him.[2] That same day, he sent Laura a long email replete with love poems, prayers, bible references, memories from their life together, professions of his love for Laura, pleas for reconciliation, and requests to be forgiven. As it appears in the record, the December 5 email is six single-spaced typed pages. The email begins:

> To you I share my heart.
>
> Poetry
>
> Dec. 2, 2011
>
> Your face is always in my mind and I look at your pictures often. I greatly desire that I had more pictures of you to look at. You are so beautiful and I love to look into your eyes. Why didn't I see it before? I was blinded by how majestic you are.

---

[2] Laura testified that after the protective order was signed, appellant left two or three voice mails on her phone.

The email also included lines such as "Without you my world is destroyed and I am thrown into loneliness and despair" and "God hates divorce and although you feel you have that right, I beg for your mercy." Appellant goes on to acknowledge:

> Due to the ways of men and the powers that be, I have been prohibited from coming before her in humility to profess my love. 'Do not speak or write,' they say. 'A weapon against you will be sought after in your words of love. She brought down men who seek destruction on you twice already. Why would you even trust her a third time?' But I cannot be silent any longer. My heart fails for not proclaiming my love for Laura.

Appellant sent another email to Laura on December 6 which began, "Why did you deceive me?" referring to Laura's hiring of an attorney. Appellant urged her to "[c]ancel this divorce and let us be separated for a time until I can prove myself to you."

On December 7, appellant emailed Laura again. Although the first paragraph of the email requested information from Laura with respect to appellant's denial of unemployment compensation benefits, the remaining four paragraphs were a plea for reconciliation stating, among other things, "Please don't divorce me Laura. I'm begging you, please. I'll do anything."

On December 8, appellant sent Laura another email at 7:21 a.m. pleading with her not to proceed with the divorce and stating, "Is there anything I can do for you not to divorce me? I am in agony right now knowing what divorce will do to us and [our child]. What will she think about God and marriage growing up in a divorced family?" He sent Laura yet another email on December 8 at 2:26 p.m. requesting her help, stating he saw a woman and child that reminded him of his mom and his daughter and he had been having anxiety attacks all day and trouble breathing and didn't know what to do. That night, at 8:08 p.m., appellant sent an email to numerous members of the couple's church begging them to help him in his efforts to stop the divorce and reconcile with Laura by contacting her on his behalf. Although church-friends informed Laura about appellant's email, no one from their church complied with appellant's

–4–

request to urge her to reconcile with him. Two days later, Laura complained to the police that appellant had violated the protective order.

Appellant was charged by information with the misdemeanor crime of violation of a protective order pursuant to section 25.07(a)(2)(a) of the Texas Penal Code. The statute provides, among other things, a person commits an offense if, in violation of a family violence protective order, he knowingly or intentionally communicates directly with a protected individual "in a threatening or harassing manner." *See* TEX. PENAL CODE ANN. § 25.07(a)(2)(A) (West Supp. 2014). The information substantially tracked the statutory language of the offense, alleging that appellant intentionally and knowingly communicated directly with Laura in a threatening and harassing manner in that he made repeated telephone calls and sent repeated text messages and emails to Laura in violation of the protective order. Appellant pleaded not guilty and, after a jury trial, was convicted of the offense. This appeal followed.

## ANALYSIS

In his first issue, appellant contends that the language "communicates . . . in a . . . harassing manner" as used in section 25.07(a)(2)(A) is unconstitutionally vague and overbroad, and violates his rights to free speech and freedom of religion under the United States and Texas constitutions. He asserts the statutory language violates the First and Fourteenth Amendments to the United States Constitution as well as sections six and eight of Article I of the Texas Constitution. Additionally under this issue, appellant asserts the use of the word "repeated" in the information is unconstitutionally vague and overbroad and violates articles 21.02(7) and 21.21(7) of the Texas Code of Criminal Procedure.[3] This issue is multifarious because it

---

[3] Appellant complains that the information failed to give notice of the specific acts for which his conviction was sought. Because he failed to raise this objection before trial, he waived the complaint. *See* TEX. CODE CRIM. PROC. ANN. art. 1.14(b) (West 2005); *Jacobsen v. State*, 325 S.W.3d 733, 739–40 (Tex. App.—Austin 2010, no pet.).

embraces multiple legal theories in a single issue. *See Davis v. State*, 329 S.W.3d 798, 803 (Tex. Crim. App. 2010). Nevertheless, to the extent that we can discern, and appellant has properly preserved and briefed various arguments under this issue, we may address them in the interest of justice. *See id*.

The constitutionality of a statute is a question of law that we review de novo. *Ex parte Lo*, 424 S.W.3d 10, 14 (Tex. Crim. App. 2013). In assessing a statute's constitutionality, we start with the presumption that the statute is valid and the legislature did not act arbitrarily or unreasonably in enacting the statute. *See Rodriguez v. State*, 93 S.W.3d 60, 69 (Tex. Crim. App. 2002). As the party challenging the statute, appellant has the burden of establishing its unconstitutionality.[4] *Id*. We must uphold the statute if we can determine a reasonable construction that renders it constitutional. *See Ex parte Granviel*, 561 S.W.2d 503, 511 (Tex. Crim. App. 1978).

Appellant's overbreadth and vagueness complaints, as we understand them, are based on the statute's failure to define "in a harassing manner." Appellant argues that the failure to define "in a harassing manner" makes section 25.07(a)(2)(A) overbroad and vague because it allowed him to be prosecuted and convicted for speech protected by the First Amendment, such as his communications with Laura about money, bills, their child, and his desire to avoid a divorce.

A statute is not vague or overbroad simply because a word or phrase is not specifically defined. *See Morgan v. State*, 557 S.W.2d 512, 514 (Tex. Crim. App. 1977). Undefined terms

---

[4] In his initial appellate brief, appellant applied the above presumption and burden of proof to his constitutional challenges. In his reply brief, however, appellant asserts *Ex Parte Lo* controls. *Lo* reverses the presumption and burden of proof for facial constitutional challenges to content-based regulations, described as "laws that distinguish favored from disfavored speech based on the ideas expressed." *Id*. at 15. In a single paragraph without any legal analysis or discussion appellant concludes *Lo*'s presumption and burden of proof applies here because "the prosecution seeks to punish speech it 'disfavored' 'based on the ideas expressed.'" Because appellant first raised this argument in his reply brief and has not put forth any discussion or authority establishing the statute under which he was convicted was a content-based regulation, and the statute itself does not address the content of communications, we apply the presumption and burden of proof generally applicable to challenges involving the constitutionality of statutes.

are typically given their plain meaning unless the language is ambiguous or the plain language leads to absurd results the Legislature could not have possibly intended. *See Wilson v. State*, 448 S.W.3d 418, 423 (Tex. Crim. App. 2014). We may consult standard dictionaries in determining the fair, objective meaning of undefined statutory terms. *See Clinton v. State*, 354 S.W.3d 795, 800 (Tex. Crim. App. 2011). A person harasses another when he persistently disturbs, bothers continually, or pesters that person. *See* WEBSTER'S ENCYCLOPEDIC UNABRIDGED DICTIONARY 645 (1989).[5] Harassment is not protected speech under the First Amendment and is not communication, although it may take the form of speech. *See Garcia*, 212 S.W.3d at 888–89 (quoting *Thorne v. Bailey*, 846 F.2d 241, 243 (4th Cir. 1988)). Because section 25.07(a)(2)(A) only prohibits intentional or knowing communication with a protected individual that is threatening or harassing, we reject appellant's overbreadth challenge. *See id*. at 889.

A statute may be unconstitutionally vague even if it is not overbroad. *Garcia*, 212 S.W.3d at 899. A statute may be challenged as unconstitutionally vague if it does not give a person of ordinary intelligence a reasonable opportunity to know what is prohibited and establish definite guidelines for law enforcement. *See Scott v. State*, 322 S.W.3d 662, 665 n.2 (Tex. Crim. App. 2010). A defendant must first show the statute is unconstitutionally vague as applied to his conduct before he can complain the statute is vague on its face.[6] *Village of Hoffman Estates v.*

---

[5] Appellant cites us to the definition of harass utilized by the Austin Court of Appeals in holding section 25.07(a)(2)(A) was not facially vague. *See Garcia v. State*, 212 S.W.3d 877, 890 (Tex. App.—Austin 2006, no pet.). Instead, we rely on the dictionary definition of harassment we used previously in *Patton v. State*, 835 S.W.2d 684 (Tex. App.—Dallas 1992, no pet.). *Patton* involved a sufficiency challenge to three convictions for violating a protective order under the predecessor statute that, like current section 25.07 (a) (2) (A), provided a person commits an offense if, in violation of an order issued pursuant to certain sections of the family code, he "knowingly or intentionally . . . (2) directly communicates with a member of the family or household in a threatening or harassing manner . . . ."

[6] Appellant appears to argue that section 25.07(a)(2)(A) implicates the free-speech guarantee of the First Amendment such that he may present a facial vagueness challenge without first demonstrating the statue was vague as to his conduct. We do not agree. Although the First Amendment generally protects the free communication and receipt of ideas, opinions and information, it allows the State to proscribe communicative conduct that invades the substantial privacy interests of another "in an essentially intolerable manner." *See Scott v. State*, 322 S.W.3d at 670 (holding section of telephone harassment statute prohibiting repeated ringing or repeated telephone communications

*Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 495 (1982); *Scott*, 322 S.W.3d at 670–71.
Appellant complains the statute is vague as applied to him because he did not know the definition of "harassing manner" and the statute prohibited communications with Laura about money, their child, and his attempts to dissuade his wife from divorcing him. Contrary to appellant's contention, however, section 25.07(a)(2)(A) did not prohibit appellant from communicating with Laura on any subject. Rather, using the ordinary dictionary definition above, it merely prohibited intentional or knowing communications that persistently disturbed, bothered continually, or pestered Laura.

Although appellant argued in the trial court and on appeal that he had no intention to harass Laura and did not know his communications with her after the protective order was entered would be deemed "in a . . . harassing manner," the evidence belies his contentions. Appellant continued to text and call Laura even after she told him it would be best to communicate by email. He made at least eight unsolicited communications to Laura in the three-week period following the issuance of the protective order and six of those communications occurred between December 5 and December 8, after he was served with divorce papers. Moreover, in his December 5 email, appellant acknowledged he had been prohibited from professing his love to Laura, but was doing so anyway. "The vagueness doctrine is not designed to convert into a constitutional dilemma the practical difficulties in drawing criminal statutes general enough to take into account a variety of human conduct and sufficiently specific to provide fair warning that certain kinds of conduct are prohibited." *Webb v. State*, 991 S.W.2d 408, 417 (Tex. App.—Houston [14th Dist.] 1999, pet. ref'd). When measured by common understanding and practice, the statutory language of section 25.07(a)(2)(A) is not

---

"in a manner reasonably likely to harass, annoy, alarm, abuse, torment, embarrass, or offend another" did not implicate conduct protected by First Amendment).

unconstitutionally vague as applied to appellant's conduct. The statute clearly protects Laura from appellant's repeated, unsolicited, and unwelcome communications in which he professes his love and begs her not to divorce him. Accordingly, the statute was not unconstitutionally vague as applied to appellant's conduct. In light of our resolution of appellant's as applied vagueness challenge, any facial vagueness challenge necessarily fails. *See Village of Hoffman Estates,* 455 U.S. at 495; *Scott*, 322 S.W.3d at 670–71.

To the extent appellant complains under his first issue that the statute also violates his freedom of speech and freedom of religion rights under the United States and Texas Constitutions, he has waived these complaints by inadequate briefing. *See* TEX. R. APP. P. 38.1(i). Apart from a general reference to the First Amendment of the United States Constitution and sections six and eight of Article I of the Texas Constitution, appellant has provided no legal analysis or discussion with appropriate legal authority explaining how the statute violates these rights. Because appellant's conclusory statement asserting violations of these constitutional provisions is unsupported by analysis and relevant legal citations, he has not complied with appellate briefing requirements. *See* TEX. R. APP. P. 38.1(i). Accordingly, these complaints present nothing for review. *See Morehead v. State*, 807 S.W.2d 577, 579 n.1 (Tex. Crim. App. 1991).

In his second issue, appellant challenges the sufficiency of the evidence supporting his conviction. In reviewing for legal sufficiency, we must determine whether any reasonable fact finder could have found the essential elements of the offense beyond a reasonable doubt. *Wise v. State*, 364 S.W.3d 900, 903 (Tex. Crim. App. 2012) (citing *Jackson v. Virginia*, 443 U.S. 307, 318 (1979)). We review all the evidence in the light most favorable to the verdict, giving deference to the fact finder's responsibility to weigh evidence, resolve conflicting testimony, and draw reasonable inferences from basic facts to ultimate facts. *See id*. We also determine

"whether the necessary inferences are reasonable based upon the combined and cumulative force of all the evidence when viewed in the light most favorable to the verdict. *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). Direct and circumstantial evidence are treated equally. *Id*.

Under section 25.07(a)(2)(A), a person can be convicted for violating a protective order if the evidence establishes beyond a reasonable doubt that he knowingly or intentionally communicated directly with a protected individual in a threatening or harassing manner. TEX. PENAL CODE ANN. § 25.07 (a)(2)(A). When analyzing for legal sufficiency, non-technical terms that are not legislatively defined are to be understood as ordinary usage allows, and jurors may give them any meaning which is acceptable in common parlance unless the term has a technical meaning. *See Medford v. State*, 13 S.W.3d 769, 771–72 (Tex. Crim. App. 2000).

After reviewing the record, we find the evidence legally sufficient to support appellant's conviction. During the three-week period at issue, appellant initiated multiple emails and texts as well as several telephone calls to Laura that were filled with unsolicited declarations of love and poetry, pleas for reconciliation, as well as arguments to support his reconciliation attempt. Many of the communications initiated by appellant focused exclusively on how he viewed their relationship and what he wanted, urging Laura to see things from his point of view. At no time did Laura express a desire to reconcile with him, or otherwise encourage him to send communications regarding his feelings for her or his desire that she not proceed with the divorce. Instead, her texts and emails to him completely ignored his declarations and pleas. After she served appellant with divorce papers, his emails persisted and intensified. In his December 5 email, appellant acknowledges that he has been prohibited from professing his love to Laura, but he nevertheless continues to send her an email each of the next three days urging her not to

–10–

divorce him. When she did not respond to these pleas, he initiated an email to church members soliciting their help in communicating his message to Laura.

Laura testified that she thought appellant's repeated communications with her were harassing because the volume, frequency, and length of the emails, together with the language he used "made me feel like I was being coerced or twisting my arm . . . it didn't make me feel comfortable at all." Based on the evidence before it, the jury could have rationally found that appellant intentionally or knowingly communicated directly with Laura in a harassing manner in that he made repeated telephone calls and sent repeated text messages and emails to her in violation of the protective order. We resolve appellant's second issue against him.

In his third issue, appellant complains about the trial court's admission into evidence of the email appellant sent to the church members soliciting their help to stop the divorce and save his marriage to Laura. He asserts that because the email was not a direct communication to Laura, it was irrelevant. He further argues that the email was more prejudicial than probative under Texas Rule of Evidence 403 because it confused the jury about the elements of the crime, allowing them to convict appellant based on an email that was not prohibited by the protective order.

We review the trial court's evidentiary rulings for an abuse of discretion. *See De La Paz v. State*, 279 S.W.3d 336, 343–44 (Tex. Crim. App. 2009). If the trial court's decision is correct on any theory of law applicable to the case, we will uphold the ruling. *See id.* Proof of a culpable mental state generally relies upon circumstantial evidence. *Dillon v. State*, 574 S.W.2d 92, 94 (Tex. Crim. App. [Panel Op.] 1978). Accordingly, appellant's intent may be inferred from his words, actions, and conduct. *See Guevara v. State*, 152 S.W.3d 45, 50 (Tex. Crim. App. 2004). Here, the email appellant sent to numerous church members after Laura ignored his previous five emails begging her not to divorce him is relevant to appellant's intent with respect

–11–

to his communications with Laura. Shortly after appellant was served with divorce papers, he sent her emails with increased frequency that repeatedly asked her not to divorce him, despite the fact he had no indication that Laura had any reservations about proceeding with the divorce. Contrary to appellant's contention that he was merely trying to express his love and save his marriage, the email to the church members suggests that rather than accept and respect Laura's decision, appellant was communicating with her in an effort to strong-arm her into changing her mind about the divorce. When his goal was not achieved by direct communication with Laura, he emailed church members to assist him in persuading Laura to drop the divorce. As such, the email to church members is evidence of appellant's intent with respect to his direct communications with Laura. (Laura testified church members did not contact her to do what appellant requested but church friends provided the email to her). There is nothing in the record to support appellant's contention that the jury was confused by the admission. Appellant's closing argument made clear appellant did not send Laura the email to the church members. Moreover, the jury charge made clear appellant had to communicate directly with Laura in a harassing manner to be convicted. Accordingly, we conclude the trial court did not abuse its discretion in admitting appellant's email to the church members. We resolve appellant's third issue against him.

Having overruled all of appellant's issues, we affirm the trial court's judgment.

/ David Evans/
DAVID EVANS
JUSTICE

Do Not Publish
TEX. R. APP. P. 47
131329F.U05

–12–



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

PAUL HENRI WAGNER, Appellant

No. 05-13-01329-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the County Criminal Court No. 10, Dallas County, Texas
Trial Court Cause No. MA-1114870L
Opinion delivered by Justice Evans, Justices Francis and Stoddart participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.


Judgment entered this 5th day of May, 2015.